Vivian CHILL, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Susan BERUE, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., and
Lawrence M. Coss, Defendants.

Bruce BERGLUND, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Edward L. Finn, Scott T. Young, Robert D. Potts, John W. Brink, and Robley D. Evans, Defendants.

John M. GANNON, Jr., on behalf of
himself and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL COR-
PORATION and Lawrence
Coss, Defendants.

Alan HARRIS, Joseph Abramson Investments and Alan Harris, Sally Abramson and Jean Rosengarten, Trustees of the Q–Tip Trust A under Indenture of Trust of Emmanuel V. Rosengarten dated January 28, 1994, on behalf of themselves and others similarly situated, Plaintiffs,

v.

GREEN TREE FINANCIAL COR-
PORATION, and Lawrence
Coss, Defendants.

Gerald SCHULTZ, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans and Edward L. Finn, Defendants.

Joseph COHEN, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., and
Lawrence M. Coss, Defendants.

Stuart I. FRIEDMAN, Matthew J. Berenda, Sr., Patricia A. Berenda, Matthew J. Berenda, Jr. and Robin S. Newman, Plaintiffs,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Arnold SCHLAGER, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Kenneth BOROW, On Behalf of Himself
and Others Similarly Situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Edward L. Finn, Scott T. Young, Richard G. Evans, and Joel H. Gottesman, Defendants.

Alice E. RHODES, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Edward L. Finn, Scott T. Young, Robert D. Potts, John W. Brink and Robley D. Evans, Defendants.

Robert P. COSTELLO, on behalf of
himself and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORPO-
RATION, Lawrence Coss and Edward L. Finn, Defendants.

Ivan E. RICO, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Steven SCHMALZ, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

John BEATTY, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., and Lawrence M. Coss, Defendants.

Robert FIDLER, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans and Edward L. Finn, Defendants.

Bradley D. DUNHAM and Julie
A. Dunham, Plaintiffs,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Robert GROSS, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans and Edward L. Finn, Defendants.

Richard P. SAMUELS, on behalf of
himself and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Ports, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Linda LIPMAN, Plaintiff,

v.

GREEN TREE FINANCIAL CORPORATION, Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, Joel H. Gottesman, Defendants.

Julian GOLPA, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP.,
Lawrence M. Coss, Defendants.

James F. MAGUIRE and June E. Maguire, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Jeffrey J. HOLLAND, on behalf of
himself and all others similarly
situated, Plaintiff,

v.

GREEN TREE FINANCIAL CORP., Lawrence M. Coss, Robert D. Potts, Richard G. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Paul GAMERDINGER and John Carragher, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GREEN TREE FINANCIAL CORPORATION, Lawrence M. Coss, Robert D. Potts, Robley D. Evans, Edward L. Finn, and Joel H. Gottesman, Defendants.

Patricia Scott COLE, Plaintiff,

v.

Lawrence M. COSS, Robert D. Potts, Richard G. Evans, W. Max McGee, Robert S. Nickoloff, Edward L. Finn, Green Tree Financial Corporation, Defendants.

Julius MARGOLIS, Plaintiff,

v.

GREEN TREE FINANCIAL CORPORATION, Robert D. Potts, Edward L. Finn, Scott T. Young, Lawrence M. Coss, Defendants.

FLORIDA STATE BOARD OF
ADMINISTRATION,
Plaintiff,

v.

GREEN TREE FINANCIAL CORPORATION, Lawrence M. Coss, Robert D. Potts, Edward L. Finn, Defendants.

Nos. Civ.97–2666 (JRT/RLE), Civ.97–2679(JRT/RLE), Civ.97–2684(JRT/RLE), Civ.97–2712(JRT/RLE), Civ.97–2764(JRT/RLE), Civ.97–2847(JRT/RLE), Civ.97–2887(JRT/RLE), Civ.97–2894(JRT/RLE), Civ.97–2899(JRT/RLE), Civ.98–15 (JRT/RLE), Civ.98–26 (JRT/RLE), Civ.98–36 (JRT/RLE), Civ.98–41 (JRT/RLE), Civ.98–67 (JRT/RLE), Civ.98–88 (JRT/RLE), Civ.98–122(JRT/RLE), Civ.98–123(JRT/RLE), Civ.98–124(JRT/RLE), Civ.98–143(JRT/RLE), Civ.98–501(JRT/RLE), Civ.98–533(JRT/RLE), Civ.98–562(JRT/RLE), Civ.98–574(JRT/RLE), Civ.98–598(JRT/RLE), Civ.98–943(JRT/RLE), Civ.98–977(JRT/RLE) and Civ.98–1162(JRT/RLE).

United States District Court,
D. Minnesota.

June 29, 1998.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motions of certain groups of putative class members for consolidation of these actions, and for the appointment of Lead Plaintiffs, and of Lead Counsel.

A Hearing on the Motions was conducted on March 16, 1998, at which time, the group of Plaintiffs, collectively known as the "Maguire Group," appeared by Samuel D. Heins, Stacey L. Mills, Jules Brody, Sanford Dumain, Sheldon L. Albert, Phil Wilson, and John A. Cochrane, Esqs.; the group of Plaintiffs, who have been referred to as the "Berglund Group," appeared by I. Stephen Rabin, Randall Steinmeyer, and Brian Murray, Esqs.; the so called "Options Plaintiffs," appeared by Daniel R. Kelly, and Patrick V. Dahlstrom, Esqs.; and the Defendants appeared by Gregory P. Joseph, and Peter S. Carter, Esqs.

For reasons which follow, the Motions to Consolidate are granted, insofar as we allow the formation of two consolidated actions— one on behalf of the Plaintiffs who assert securities Laws claims based upon their ownership of Green Tree stock ("Stock Action"), and the other on behalf of those putative class members whose losses are alleged to have occurred from the ownership of options ("Options Action"). The Maguire Group's Motions for Appointment of Lead Plaintiff, and of Lead Counsel, are granted, as modified to form a twenty-member grouping of Lead Plaintiffs, with respect to the consolidated Stock Action, but is denied with respect to the consolidated Options Action. In the Options Action, we provisionally grant the Motions by the Options Plaintiffs for Appointment of Lead Plaintiff, and of Lead Counsel, on the condition that the Options Plaintiffs provide the Court with certifications, as provided in Title 15 U.S.C. § 78u–4(a)(2)(A), **by no later than 20 days from the date of this Order.**[1]

### II. *Factual and Procedural History*

These Motions arise from a total of 27 putative class actions, which involve alleged violations of Federal securities laws by Green Tree Financial ("Green Tree"), a diversified financial services company, and its officers. The actions were brought pursuant to Sections 10(b), and 20(a), of the Securities and Exchange Act of 1934, *Title 15 U.S.C. §§ 78j(b), 78t(a),* and under Rule 10b–5 of the Securities and Exchange Commission ("SEC"), *17 C.F.R. § 240.10b–5,* and they commonly claim that Green Tree employed unduly aggressive accounting methods so as to rachet up its reported profits and, thereby, to proportionally enhance the compensation package of Lawrence M. Coss ("Coss"), Green Tree's C.E.O., whose salary was tied to the company's reportedly ballooning profits. The Plaintiffs allege that they relied upon the integrity of the market—particularly Green Tree's over-pitched profit statements—and purchased Green Tree's artificially inflated securities, which lost much of their value when the corporation subsequently revised its financial reports.

Two corrective disclosures, which were issued on November 13, 1997, and on January 27, 1998, are claimed to have caused a plunge in the price of Green Tree's stock, from $40.50/share, prior to the first announcement, to a low of $19.00/share, on January 28, 1998. The stock had rebounded somewhat, however, to a price of $29.75, at the close of trading on the Friday before the Hearing on March 16.[2]

---

**1.** On the day of the Hearing, the Maguire Group requested Leave to File a Reply Memorandum. For reasons expressed at the Hearing, the Motion was granted, and we have, in fact, considered the submitted Reply Memorandum, as well as subsequent informal filings.

**2.** Since the Hearing, Green Tree's stock has regained much of its lost value, trading at nearly

On December 2, 1997, Vivian Chill ("Chill") filed the first of these actions against the Green Tree Defendants, on behalf of a proposed class consisting of all entities who purchased Green Tree common stock, between January 27, 1997, and November 19, 1997. [Civ. No. 97–2666]. On that same day, Chill published a Notice of the pendency of the class action, in the *Business Wire*, which advised other members of the proposed class of their right to move the Court for an appointment as Lead Plaintiff. See, *Heins Aff.*, Ex. F, *Title 15 U.S.C. § 78u–4(a)(3)(A)(I)*. On the following day—December 3, 1997—Bruce Berglund ("Berglund") filed a similar action [Civ. No. 97–2684], and, likewise, published the statutory Notice of the putative class members' right to seek appointment, as a Lead Plaintiff, in the *Business Wire*. See, *Murray Aff.*, Ex. 2. Since those initial filings and publications, subsequent Complaints, and an amendment to the Berglund Complaint, have extended the class period through January 27, 1998. Additionally, one of the actions, which was commenced by Stuart I. Friedman, and others, was filed on behalf of the purchasers of Green Tree's options, as well as its common stock. [Civ. No. 97–2894 (JRT/RLE) ]. During this same time, several other Notices of the litigation were disseminated, including two which were published in *Business Wire*, and *PRNewswire*, on January 30, and February 4, 1998, and which alerted members of the class period, which extended through

January 27, 1998, of their right to seek appointment as a Lead Plaintiff. *Dahlstrom Aff.*, Exs. A, B.

On February 2, 1998, the Berglund Group moved to consolidate these actions—except *Friedman, et al. v. Green Tree Financial Corp.*, which was brought on behalf of options purchasers—to be appointed Lead Plaintiffs, and to have their chosen attorneys appointed as Lead Counsel. The Berglund Group consists of 41 individual and institutional investors,[3] who purchased common stock in Green Tree during the amended class period, and the Group claims to have suffered an aggregate pecuniary loss of $586,521.49. *Murray Aff.*, Ex. 4. Prominent among the Berglund Group is Robert G. Pfundstein who, alone, allegedly lost $376,-000. *Id.* The Berglund Group proposes that, if they are appointed as Lead Plaintiffs, the Court should appoint the law firms of Rabin & Peckel LLP, and of Reinhardt & Anderson, to serve as Lead Counsel. See, *Title 15 U.S.C. § 78u–4(a)(3)(B)(v)*.

Also on February 2, the Maguire Group moved the Court to consolidate all of the actions—including the *Friedman* suit—to be appointed as Lead Plaintiffs, and to have its selection of Lead Counsel approved by the Court. The Maguire Group has an unusual two-tiered structure, which consists, overall, of nearly 300 investors. A subset the Maguire Group consists of a smaller grouping of seven investors, who would serve as the Lead

$40.00/share during the first week of April and, as of the time of this Order, was reporting a value of approximately $44.00 per share. According to Title 15 U.S.C. § 78u–4, each of the Plaintiff's damages is limited to the difference between the price at which the stock was purchased, and the mean trading price during a period of 90 days following the dissemination of the information correcting the misstatement, or the omission, at issue in the litigation. As the most recent dissemination of such corrective information occurred on January 27, 1998, that 90–day period has now expired. While the resurgence of the value of the Green Tree stock may have mitigated Plaintiffs' damages, for the purposes of this Motion, however, we have, by necessity, limited our consideration to the stock value before the date of the Hearing, and, more precisely, to those time parameters which were set forth in the applicants' certifications. Accordingly, our assessment of the Plaintiffs' respective financial interests is approximation of

the applicants' financial interests in the case, for purposes of determining the most adequate Lead Plaintiffs. See, *Title 15 U.S.C. § 78u–4(a)(3)(B)(iii)(bb)*.

3. The Applicants in the Berglund Group are: Bruce Berglund, Alice E. Rhodes, Patricia M. Anibal, Jack L. Birchall, George U. Carneal, Austin Chidester, Judy S. Cunningham, Randy Djerf, Sylvan and Marjorie Doroshow, Robert L. Doyle, Jane F. Ebeling, Arlene Fish, Vernon A. Gunderson, Erling Hansen, Brad Herther, Gerald L. Hyrkas, Pamela J. Kalen, Richard Kunniainen, Mark A. Lange, Robert E. Larkin, Paul Libby, John Longo, Ambrose J. Metz, Gary Mundt, Blane Okean, Paul Z. Okean, Alex Panno, Robert G. Pfundstein, Michael W. Pharand, Richard P. Plunkett, Andrew M. Price, RECO, Inc. Profit Sharing Plan, Barry A. Sandberg, David L. Stapletal, Gary V. Smith, Dorine Tarbet, Patricia M. Thomas, Edward J. Woo, and ZHR Investors.

Plaintiffs.[4] The large Maguire Group initially claimed to have suffered $4.9 million in damages,[5] while the seven largest investors claim to have suffered $2.8 million in financial losses. The Maguire Group proposes that its selected law firms—Heins, Mills & Olson P.L.C.; Milberg, Weiss, Bershad, Hynes & Lerach LLP; Barrack, Rodos & Bacine; and Stull, Stull & Brody—be appointed as Lead Counsel.

█ As to the Options Plaintiffs,[6] on March 13, 1998, a group of investors, whose claimed losses derive from the purchase of stock options, advised the Court of their opposition to the consolidation of the Options Action, with the Stock Action, because of the further legal hurdle which plaintiffs, who claim losses on the options transactions, may face in order to be successful under the securities laws.[7] As noted, the Options Plaintiffs propose that the Court join the actions into two consolidated class actions— one on behalf of all aggrieved purchasers of Green Tree common stock, and the other on behalf of the options traders, and they request that they be appointed Lead Plaintiffs in the Options Action. Collectively, the Options Plaintiffs claim to have suffered a loss of $3.8 million, and they request that their firms—Pomerantz, Haudek, Block & Grossman and Mansfield & Tanick—be appointed as Lead Counsel.

## II. *Discussion*

The Motions before us are governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which was enacted to cure

---

4. The large Maguire Group is too numerous to list here, see, *Heins Aff.*, Ex. D., but the smaller tier of the Group consists of James and June Maguire, Stuart I. Friedman, Jeffrey Holland, James Corbett, Tim Fix, Robin S. Newman, and Harold Seward.

5. As of March 13, 1998—which was the Friday before the Hearing on this matter—the Maguire Group had increased its estimated aggregate losses to approximately $5.6 million, so as to account for changes in the computed mean trading price for the 90 days following the most recent disclosure of corrective information.

6. The Options Plaintiffs, who consist of Larry A. and Susan Chinitz, Joshua L. Drucker, June Shapiro, Steven M. Shapiro, Lora Marin, Martin Marin, Andrea Riddle, Allan J. and Diane Wertheim, and Canadamerica Finance, Inc., claim to have suffered losses, during the class period, in options transactions involving Green Tree stock.

7. We reject the Maguire Group's contention that the Options Plaintiffs' Application to serve as Lead Plaintiffs should be disregarded because it was not filed within 60 days of December 2, 1998. According to Title 15 U.S.C. § 78u–4(a)(3)(A)(I), an applicant must move, within 60 days of the publication of its Notice, in order to be appointed to serve as a Lead Plaintiff. If more than one ostensible class action is filed "asserting substantially the same claim," then only the plaintiffs in the first filed action "shall be required to cause notice to be published ∗∗∗." Section 78u–4(a)(3)(A)(ii). In this case, several Notices of the pending action against Green Tree were filed, the most recent of which· provided that a class member would have until March 31, 1998, to move to be appointed as Lead Plaintiff. Of particular significance, in our view, is the fact that, upon the Amendment of the *Berglund* Complaint, and the filing of other Complaints, the class period was expanded to January 27, 1998. In fact, the Notices published at the time informed prospective Plaintiffs of their right to move to serve as Lead Plaintiff through the end of March, 1998. Under the Maguire Group's interpretation, those persons who purchased Green Tree securities through that date, and who suffered financial losses thereafter, would have as little as one week to move to be appointed as a Lead Plaintiff, only because the first Complaint was filed, and Notice published before the actionable events were completed. We are satisfied that the drafters of the PSLRA did not contemplate such a race to the courthouse, which would deprive potentially injured plaintiffs of the right no serve in the prosecution of the litigation. The overriding purpose of the Private Securities Litigation Reform Act of 1995 ("PSLRA" was to replace so-called figurehead or professional plaintiffs, with real investors, in part, by slowing that chase.) See, *Ravens v. Iftikar*, 174 F.R.D. 651, 654 (N.D.Cal.1997), citing Senate Rep. No. 104–98, 104th Cong., 1st Sess., *1995 U.S.C.C.A.N.* 679, 689.

While a prompt resolution of the Lead Plaintiff Motion may be desirable, we do not read the 60 day period to relate back to the original Notice publication date, where it would deprive injured investors of any opportunity to seek to be selected as Lead Plaintiff. At the very least, the extension of the class period, until the end of January, would counsel against a strict application of the 90–day requirement, when that is at odds with the fundamental importance of hearing all viewpoints on issues of consolidation and class leadership. After all, we "are not referees at prize fights but functionaries of justice." *Johnson v. United States*, 333 U.S. 46, 54, 68 S.Ct. 391, 92 L.Ed. 468 (1948) (Frankfurter, J., dissenting in part).

a variety of perceived abuses in the prosecution of those class actions which claim violations of the Federal securities laws. The PSLRA provides that, where there is more than one class action asserting substantially the same securities law claim, the Court should first consolidate the actions, as appropriate, and then should appoint, as Lead Plaintiff, the member or members of the putative class who, in the Court's judgment, would be most capable of adequately representing the interests of the class members. *Title 15 U.S.C. § 78u–4(a)(3)(B)*.

### A. *Consolidation.*

The parties agree that these actions involve common questions of law and fact, which warrant consolidation, but with one significant exception. The Maguire Group proposes a consolidation of all Green Tree securities actions, including those brought on behalf of options purchasers. In contrast, the Berglund Group has urged that the action on behalf of options purchasers should not be consolidated with the other actions, while the Options Plaintiffs have requested that the actions, which involve options traders, be consolidated into a separate class action, apart from the Stock Action.

■ 1. *Standard of Review.* A Motion to consolidate, pursuant to Rule 42(a), Federal Rules of Civil Procedure, is entrusted to the sound discretion of the Court, but that discretion is not unbounded. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994); *United States E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir.1990), cert. denied, 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991); *Powell v. National Football League*, 764 F.Supp. 1351, 1359 (D.Minn. 1991). As Rule 42(a) makes clear, a common issue of fact or law is a prerequisite to consolidation. See, *In re Be–Mac Transport Co.*, 83 F.3d 1020, 1027 (8th Cir.1996); *Enterprise Bank v. Saettele*, supra at 236. In considering consolidation, the Court should thoughtfully weigh:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF*, 999 F.2d 1007, 1011 (6th Cir.1993), quoting *Hendrix v. Raybestos–Manhattan Inc.*, 776 F.2d 1492, 1495 (11th Cir.1985); see also, *Kramer v. Boeing Co.*, 134 F.R.D. 256, 258 (D.Minn.1991).

Consolidation is not appropriate "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir.1998).

■ 2. *Legal Analysis.* The crux of the dispute over consolidating the Options Action with the Stock Actions is the potential prejudice posed by the additional legal hurdle for the Plaintiffs who seek compensation for options losses. The Berglund Group contends that the Stock Action Plaintiffs would be prejudiced by the inclusion of the Options Plaintiffs in a consolidated action, because, within this Circuit, options purchasers do not have standing to sue under the Federal securities laws. The Berglund Group believes that stock purchasers should not be burdened with additional impediments to class certification, and to success on the merits, that are unique to the Options Plaintiffs. The Options Plaintiffs voice the flip side of that argument, by suggesting that the Stock Plaintiffs will have little motivation to stave legal attacks that threaten only the viability of the claims of the Options Plaintiffs. For its part, the Maguire Group, which holds a large individual loss from the trade of call options, has argued that the differences between the two categories of Plaintiffs are trivial, as options traders do, in fact, have standing to sue for affirmative misrepresentations under the Federal securities laws.

The parties' divergent contentions are premised upon differing interpretations of *Laventhall v. General Dynamics Corp.*, 704 F.2d 407, 414–15 (8th Cir.1983), cert. denied, 464 U.S. 846, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), which held that a purchaser of call options did not have standing to sue for damages which resulted from insider trading, under Section 10(b) of the Securities Ex-

change Act of 1934. The Court agreed with the plaintiff that options are treated as securities under the Act, see, *id.* at 410, citing *Title 15 U.S.C. § 78c(a)(10)*, but highlighted the practical differences between shareholders and options holders, in their relationships with the corporation:

> Options are bought because they offer an investor a potential profit from a limited dollar exposure; on the other hand, trading in options can be far more speculative than the purchase of common stock or other securities.
>
> *     *     *     *     *     *
>
> "The relationship between corporate insiders and shareholders stands in stark contrast to the lack of relationship between the corporate insiders and options traders. While it is true that shareholders and options traders both rely on the fortunes of the corporations, the dispositive distinction is that the options trader has no equity interest in the corporation by virtue of his selling or purchasing an option on the corporation's stock. He is owed no special duty by the officers because, quite simply, the corporation is not run for his benefit. He has contributed no equity to the corporation and, in the event of insider wrongdoing, he has no right to bring suit to make the corporation whole. \*\*\* In short, as a shareholder is one entitled to the benefits of a trust relationship. As an options trader, one is not."

*Id.* at 410–11, quoting *O'Connor & Associates v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1184–85 (S.D.N.Y.1981).

The Court reasoned that, given this fundamental difference in relationships, where the plaintiff was an options holder, and the corporate insiders dealt with stock, the options holder's claim, that the insider stock trading adversely affected the value of his options, was too "speculative" to give him standing to sue under the securities laws. *Id.* at 414–15. One Court in this District has gone so far as to hold that options losses do not confer standing to sue for any violation of the securities laws, including fraudulent misrepresentation. *Lerner v. SciMed Life Sys., Inc.*, 1994 WL 374319, at \*3 (D.Minn.1994) (dismissing putative class action for lack of

standing); see also, *Bianco v. Texas Instruments, Inc.*, 627 F.Supp. 154, 163 (N.D.Ill. 1985) (options traders lack standing to sue issuer of underlying securities).

The Maguire Group insists that *Laventhall* should be limited to its facts, i.e., the insider trading context. To buttress their insistence, the Group cites the Third Circuit's decision which distinguished the insider trading circumstance, that was addressed by our Court of Appeals, in *Laventhall*, from fraud-on-the-market claims, and allowed the latter type of claim to proceed by options holders. See, *Deutschman v. Beneficial Corp.*, 841 F.2d 502 (3rd Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). The Court explained that, notwithstanding the Eighth Circuit's decision, "[n]o Supreme Court case and no Court of Appeals case has ever imposed a transactional nexus requirement in a section 10(b) affirmative misrepresentation case." *Id.* at 507. The Court found that the Eighth Circuit's standing preclusion should be limited to insider-trading claims by options holders, and ruled that a purchaser of an option contract has standing to seek damages under Section 10(b) for affirmative misrepresentations. *Id.*; see also, *Fry v. UAL Corp.*, 84 F.3d 936, 938 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 447, 136 L.Ed.2d 343 (1996); *Margolis v. Caterpillar, Inc.*, 815 F.Supp. 1150, 1156 (C.D.Ill.1991); *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 775 (D.Mass.1988).

These cases cast doubt upon *Laventhall's* applicability to options-holders' securities law claims, and call into question the continuing vitality of *Lerner v. SciMed Life Sys., Inc.* Nevertheless, the Maguire Group's argument misses the limited scope of our inquiry, for our role is not to-resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough to threaten the rights of the Plaintiffs as a whole, should the actions be consolidated into one. Given the broad and categorical language of the Court's opinion in *Laventhall*, that the options trader is not entitled to the benefits of a "trust relationship" with the corporation whose stock is optioned, and in view of the exten-

sion of that language, by a Court within this District, to a claim analogous to those presented here, we conclude that the distinction between options traders and stock traders is too notable, and potentially vexing, to ignore.

Accordingly, we grant the Plaintiffs' respective Motions to Consolidate, in part, with all of the actions being consolidated into two actions, one on behalf of the Stock Plaintiffs, and the other on behalf of the Options Plaintiffs.

### B. *The Motions for Appointment as Lead Plaintiff.*

1. *Standard of Review.* Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable or adequately representing the interests of the class members \*\*\*." *Title 15 U.S.C. § 78u–4(a)(3)(B)(I).* This grant of authority to the Courts, which will control the civil prosecution of Federal securities violations, was intended to stem the influence of "professional plaintiffs" who frequently appear as named plaintiffs, and to "empower investors so that they, not their lawyers, control private securities litigation," by allowing the Court to ensure the transfer of "primary control of private securities litigation from lawyers to investors." Senate Rep. No. 104–98, 104th Cong., *1995 U.S.C.C.A.N.* 679, 683, 685. By this provision, "Congress sought to eliminate figurehead plaintiffs who exercise no meaningful supervision of the litigation." *Ravens v. Iftikar,* 174 F.R.D. 651, 661 (N.D.Cal. 1997).

■ In selecting the group of class members, who are the most capable of adequately representing the class, we "adopt a presumption that the most adequate" group is that which:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(1);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Title 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).*[8]

The presumption "may be rebutted only upon proof" that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Title 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).*

Once the "most adequate plaintiff" has been determined, it "shall, subject to the approval of the court, select and retain counsel to represent the class." *Title 15 U.S.C. § 78u–4(a)(3)(B)(v).*

2. *Legal Analysis.* Given these provisions of the PSLRA, we turn to the Lead Plaintiff Motions in each of the consolidated actions.

a. *The Lead Plaintiffs for the Stock Action.* Excluding Friedman, whose losses are claimed to have largely resulted from options transactions, the aggregated claimed losses of the hundreds of investors in the Maguire Group, which would still total more than $4 million, eclipse those claimed by the

---

**8.** According to Rule 23(a), Federal Rules of Civil Procedure, a plaintiff may sue as a class representative if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." For these purposes, a proposed Lead Plaintiff need only make a preliminary showing that he or she satisfies the typicality and adequacy requirements of Rule 23. See, *Gluck v. Cellstar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997); *Ravens v. Iftikar,* 174 F.R.D. 651, 663 (C.D.Cal. 1997). Most pertinent to the Lead Plaintiff analysis is the rule that a " 'class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' " *Amchem Products, Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997), quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), quoting, in turn, *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

Berglund Group, which claims to have sustained approximately $586 thousand in monetary damages. Nevertheless, the Berglund Group challenges the adequacy of the Maguire Group for a number of interrelated reasons. Paramount among them is the Berglund Group's contention that the Maguire Group is far too numerous to realistically serve as Lead Plaintiffs. In a second attack on the Maguire Group's application, the Berglund Group contends that many of the certifications, in the Lead Plaintiff Applications from the Maguire Group members, are deficient in various respects. According to the Berglund Group, these errors should foreclose the Court from finding that the Maguire Group, as a whole, is entitled to a presumption of superior adequacy. Finally, the Berglund Group contends that, even if, presumptively, the Maguire Group were the most adequate, members of that Group would be subject to unique defenses that would render the Group itself incapable of adequately representing the class.[9]

■ i. *The Number of Lead Plaintiffs.* We agree with the Berglund Group that, if approved, the expansive number of Lead Plaintiffs, who are offered by the Maguire Group, and whose number approaches 300, would threaten the interests of the class, would subvert the intent of Congress, and would be too unwieldy to allow for the just, speedy and inexpensive determination of this action. If, as we understand its intent, the PSLRA was enacted to transfer "primary control of private securities litigation from lawyers to investors," Senate Rep. No. 104–98, at 685, then the Lead Plaintiff procedure should focus on the selection of a select committee to manage and direct the litiga-

tion, as opposed to management through a Committee of the Whole.

"The lead plaintiff should actively represent the class." *Id.* at 689. In an effort to delimit the number of Lead Plaintiffs, the Maguire Group proposes that only seven of the suggested three hundred would have an active role in the litigation with, apparently, the remaining members serving some less active role. Whether the Maguire Group intends, as they have represented, to offer the bulk of its members no meaningful active role in the litigation, or to allow each of them to serve, in practice, as a Lead Plaintiff, we are faced with a prospect—that of an over— or a potentially under represented grouping of Lead Plaintiffs—which is inconsistent with the intent of Congress.

Ultimately, the PSLRA channels the concern, as to the adequacy of representation, through Rule 23, Federal Rules of Civil Procedure. See, *Title 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).* As a result, the Maguire Group must here establish that it "will fairly and adequately protect the interests of the class." *Rule 23(a)(4), Federal Rules of Civil Procedure.* An infinitum of otherwise adequate named-plaintiffs can betray the interests of the class. See, *In re Ford Motor Co. Bronco II Product Liability Litigation,* 177 F.R.D. 360, 367 (E.D.La.1997) (fact that there are 120 named plaintiffs diminishes adequacy); *Gill v. Monroe County Dept. of Social Services,* 79 F.R.D. 316, 330 (W.D.N.Y.1978) (finding existence of 28 named plaintiffs would unnecessarily complicate proceedings, and directing plaintiffs to reduce their number).

As we have previously stated, "the assertion can legitimately be made that the larger

9. The Berglund Group also objects to the candidacy of Tim Fix ("Fix") because his certification, which is dated January 20, 1998, followed an assertedly improper advertisement, in the *St. Paul Pioneer Press,* by one the Maguire Group's proposed law firms—Barrack, Rodos & Bacine. The Berglund Group represents that the District Court, the Honorable John R. Tunheim presiding, admonished that firm for the impropriety of that advertisement, and the Group argues that Fix's certification, being so tainted, should not be considered for a Lead Plaintiff position. In response, the Maguire Group contests the characterization of the District Court's comments as

any form of "rebuke," and underscores that there is no evidence that Fix ever observed the advertisement.

Assuming, *arguendo,* that the PSLRA embodies the use of a Lead Plaintiff "exclusionary rule," so as to remedy the taint of an offending class Notice, the rule should have been invoked earlier. We are not privy to the District Court's comments about the advertisement, nor is it clear what, if any, remedies were then considered. If, as the Berglund Group suggests, the District Court discovered a violation of the class Notice Procedures, we have no occasion to supplement the remedy then determined by the Court.

the number of proposed Lead Plaintiffs, the greater the dilution of the control that those Plaintiffs can maintain over the conduct of the putative class action, [while] an equal cogent assertion can be broached that, when more greatly numbered, the Lead Plaintiffs can more effectively withstand any supposed effort by the class counsel to seize control of the class claims." *D'Hondt v. Digi Int'l Inc.*, 1997 WL 405668 *3 (D.Minn.1997). We do not suggest that either Rule 23, or the PSLRA, warrants an arbitrary limit on the number of proposed Lead Plaintiffs, for we only hold that, in a case-by-case inquiry, a rule of reason prevails. If the proposed group of Lead Plaintiffs will not "actively represent the class," and the profusion of Lead Plaintiffs would threaten to unnecessarily complicate the proceedings, then the Court may exercise its supervisory authority to restrict. the number of Lead Plaintiffs. Such a restriction is warranted here. Therefore, we reject the Maguire Group's proposition that, as currently constituted, it is the most capable of adequately representing the class.

■ The six individuals, who comprise the smaller version of the Maguire Group, still possess the largest financial interest. The eligible members of the smaller tier of the Maguire Group—James and June Maguire, Harold Seward ("Seward"), Jeffrey Holland ("Holland"), James Corbett ("Corbett"), Tom Fix ("Fix"), and Robin Newman ("Newman"),—certify that, when considered together, they have suffered a financial loss of $2,232,616.36 due to the Defendant's alleged securities violations.[10] While we reject the Maguire Group's proposed two-tiered structure, we conclude that such a defect is not fatal to their Motion for Appointment as Lead Plaintiffs. Given the comparative gravity of the claimed losses of the smaller Maguire Group, we find it appropriate to consider the adequacy of that smaller subset of Group members to serve as Lead Plaintiffs.

■ ii. *Certifications and Proof of adequacy.* A contentious aspect of these Motions centers upon the formal and substantive sufficiency of the Maguire Group's certifications, in establishing the Group's financial interest in the relief being sought by the class, and in demonstrating the Group's adequacy in other respects. The threshold dispute focuses on whether certifications need to be supplied in conjunction with a Motion to be appointed as a Lead Plaintiff. Pointing to the Maguire Group's dalliance in providing compete certifications for its proposed Lead Plaintiffs, the Berglund Group insists that each proposed Lead Plaintiff must file at certification, as described in *Title 15 U.S.C. § 78u–4(a)(2)(A)*,[11] in conjunction with a Motion for appointment. Relying upon a textual omission in the PSLRA, the Maguire Group counters that certifications are

---

10. According to the calculation of the Maguire Group, the members of the smaller Maguire grouping suffered the following financial losses during the applicable period:

| | |
|---|---:|
| James and June Maguire | $ 170,415.00 |
| Harold Seward | 434,034.00 |
| Jeffrey Holland | 1,535,475.66 |
| James Corbett | 65,660.00 |
| Tom Fix | 8,971.70 |
| Robin Newman | 18,060.00 |
| TOTAL | $2,232,616.36 |

See, *Maguire Group Movants' Losses Chart*, Hedlund Aff., Ex. A; *Maguire Certification, Heins Aff.*, Ex. B.; *Seward Certification, Hedlund Aff.*, Ex. J.; *Holland Certification, Heins Aff.*, Ex. B; *Corbett Certification, Hedlund Aff*, Ex. F; *Fix Certification, Heins Aff.*, Ex. C; *Newman Certification, Hedlund Aff.*, Ex. H.

11. The PSLRA requires each plaintiff, who seeks to serve as a representative party on behalf of a class, to file a "sworn certification" with his or her Complaint, which "states that the plaintiff has reviewed the complaint and authorized its filing;" "states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;" "states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;" "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;" "identifies any other action under this chapter, filed during the 3–year period preceding the date on which the certification is signed by plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class;" and, "states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court ***." *Title 15 U.S.C. § 78u–4(a)(2)(A)(I)–(vi)*.

not required, and those that were furnished were gratuitous. We conclude that, while not explicitly required by the text of the PSLRA, the overall statutory scheme requires any Lead Plaintiff Motion to be accompanied by certifications, which attest, on each applicant's behalf, to his or her eligibility as enunciated in Section 78u–4(a)(2)(A).

We reject the Maguire Group's contention that absolutely no certifications are required for these purposes. The Group relies on the text of Section 78u–4(a)(2)(A), which only expressly requires that sworn certifications be "filed with the complaint ***." In the Maguire Group's estimation, only those plaintiffs who have filed Complaints need provide certifications, and the other prospective Lead Plaintiffs are exempt from the certification requirements, since they did not file a Complaint. At least two Courts agree with the Maguire Group that, given the apparent statutory omission, certifications need not be filed with Motions for appointment as Lead Plaintiff. See, *Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 61 (D.Mass.1996) ("In light of the detailed revision of procedures under the PSLRA, this omission does not appear to be an oversight."); *Blaich v. Employee Solutions, Inc.*, 1997 WL 842417 *2 (D.Ariz.1997).

With due respect, we disagree, and conclude that Congress intended the provision of certifications in conjunction with a Lead Plaintiff Motion. As pertinent, the legislative history of the PSLRA reveals that Congress intended all prospective Lead Plaintiffs to provide the information contained in the certifications:

> The Committee recognizes that certain basic information about the lead plaintiff should be provided at the outset of litigation. Accordingly, the Committee requires that the lead plaintiff file a sworn certified statement with the complaint. The plaintiff must certify that he or she: (a) reviewed and authorized the filing of the complaint; (b) did not purchase the securities at the direction of counsel or to participate in a lawsuit; © is willing to serve on behalf of the class. To further deter professional plaintiffs, the plaintiff must also identify any transactions in the securities covered by the class period, and the other

lawsuits in which the plaintiff has sought to serve as lead plaintiff in the last three years.

Senate Report No. 104–98, at 689.

It would be anomalous, if not perverse, to require sworn certifications from only the plaintiffs named in a complaint, but then allow others persons to be appointed as Lead Plaintiffs, without attesting to any of the information adjudged appropriate to that standing, by Congress.

In the absence of such certifications, the entire scheme of the PSLRA could be displaced, as inventive law firms would still be allowed to recruit "professional plaintiffs," and foist them on an unsuspecting, and uninformed Court, in the context of a Lead Plaintiff Motion. If Congress intended "that certain basic information about the lead plaintiff should be provided at the outset of litigation," in order to "mak[e] it harder for lawyers to invent a suit and then attach a plaintiff," we will not read the requirement, that the certification be filed with the Complaint, as preemptive, so as to preclude the supervising Court from requiring that the same information be provided in conjunction with a Lead Plaintiff Motion. If there is any benefit in appending a certification to the Complaint, it is only realized when the Court reviews the certification in the context of a Lead Plaintiff Motion. To limit the certification requirement would not only hamstring the effectiveness of the supervising Court, but would trivialize Congress' expressed concern for investing the control over Federal securities class actions in the hands of qualified litigants, as opposed to their lawyers. Even if we err in our reading of the PSLRA, we conclude that, inherently, we have the authority to require the certifications, which the Maguire Group voluntarily filed, in order to assure the proper administration of the Act, and the integrity of the Court processes. Accordingly, were we to have concluded that such certifications were not required under the Act, we would have directed that such certifications be submitted as an integral part of Lead Plaintiff Motion.

The Berglund Group emphasizes that, as originally filed, several of the Maguire Group's certifications contained technical de-

ficiencies. Newman's certification failed to disclose the prices at which she purchased her Green Tree Shares; Corbett did not sign the certification; and Seward did not adequately explain his trading activity, which facially appeared to have resulted in financial gains. In response, the Maguire Group supplemented the certifications in order to correct these technical deficiencies. See, *Hedlund Aff.,* Exs. F, H. With respect to Seward, although impossible to glean from his certification, it was explained that his losses were calculated by using the first-in-first-out ("FIFO") method of accounting, which matches specific purchases of stock with specific sales. In the final analysis, we find that the noted flaws in the certifications have been sufficiently rectified so as to allow the Court to accept Newman's, Corbett's, and Seward's computation of their asserted financial losses. With respect to Seward, whose trading activity during the class period was quite extensive, Congress's clear directive, that the appointment of Lead Plaintiffs not encounter delay, and that the limited factual foundation, which the PSLRA requires for an assertion of a financial interest, forecloses our independent verification of his claimed measure of damages. It suffices to say that, given the documentation of his transactions, Seward's financial stake in this litigation is substantial, and his claimed losses of $434,-034.00 have not been effectively rebutted, at least for the purposes of this Motion.

Accordingly, The subset of the Maguire Group has established that its members possess, in the aggregate, the greatest financial interest in the relief being sought by the class and, with Friedman excluded, otherwise satisfies the requirements of Rule 23, Federal Rules of Civil Procedure.

■ iii. *Rebuttal of the Presumption.* As noted, in order to overcome the presumption, that the small Maguire Group is the most adequate grouping of Lead Plaintiffs, the Berglund Group must show either that the Maguire Group will not "fairly and adequately protect the interest of the class," or are "subject to unique defenses that render" them "incapable of adequately representing the class." *Title 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).* Once the presumptive

Lead Plaintiffs have been determined, then the Court concentrates on the typicality and adequacy of representation, under Rule 23(a), in considering a challenge to their presumptive status. See, *Ravens v. Iftikar,* supra at 662.

■ The Berglund Group has challenged the adequacy of Friedman, and Holland, to serve as Lead Plaintiffs, because they are not similarly situated in the securities environment with other members of the class, and especially in view of our refusal to consolidate the Stock Action with the Options Action. As noted, Friedman's losses arose from both trade in stock, and in options, and therefore, he would face the standing issue which was ruled upon, adversely to the interests Friedman would litigate here, in the *Laventhall* and *Lerner* decisions. Thus, to the extent that Friedman would still apply to be a Lead Plaintiff in the stockholders' action, he is precluded from attaining that status by virtue of Section 78u-4(a)(3)(B)(iii)(II)(bb).

■ The Berglund Group also challenges Holland's Application, for paralleling reasons. In his Complaint, Holland describes himself as a "market maker" on the Chicago Board of Options Exchange. A "market maker" in securities is defined, in the Securities and Exchange Act of 1934, as a broker-dealer who holds himself out in the interdealer market as being ready to purchase and sell a security for his own account, on a regular and continuous basis. See, *Title 15 U.S.C. § 78c(a)(38).* A market maker "regularly publishes bid and ask quotations in an interdealer system or furnishes such quotations on request, *** [and] is 'ready, willing, and able' to trade reasonable quantities of the security in which he is making a market to other dealers at his quoted prices." *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 344 (N.D.Ill.1982). The market maker derives his profit from the "spread"—that is, the difference between the bid and asked price. *Id.*

The Berglund Group believes that, as a market maker, Holland would not rely upon the integrity of the market in the same way as the ordinary investor would, and would be

subject to a unique defense to his fraud-on-the-market claim. Of course, in a Rule 10b–5 action, an investor's reliance on public, material misrepresentations may be presumed, but that presumption may be overcome by, among other things, a showing that the individual plaintiff traded, or would have traded, despite his knowledge that the statement was false. *Basic Inc. v. Levinson*, 485 U.S. 224, 247–48, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

In *McNichols*, the District Court found that a market maker, who bought substantial quantities of stock in a declining market, was subject to an arguable defense, based upon its lack of reliance on the alleged misrepresentation, and was an atypical plaintiff, who was ill-suited to represent the class. *McNichols v. Loeb Rhoades & Co.*, supra at 346. The Court cautioned, however, that it was not holding "that a market maker, as a matter of law and solely by virtue of its role as a market maker, can never adequately represent the interests of a class of investors," for "a court must examine the facts and issues in each case to determine whether a plaintiff's special role, knowledge, or expertise makes his claims atypical in light of the allegations in that particular case." *Id.*, n. 38 [citations omitted]. The Berglund Group argues that the *McNichols* rationale applies here, as Holland was a market maker in Green Tree securities and, therefore, he may well be subject to a defense that, unlike the other plaintiffs, he did not sustain damages from reliance upon the integrity of the market.

The Maguire Group's response is twofold. First, the Group argues that Holland's market sophistication should not preclude his appointment as a Lead Plaintiff. See, *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 *5 n. 10 (N.D.Ill.1997) (the purpose of the PSLRA is to ensure that sophisticated investors would control the course of securities litigation, rather than having the litigation being controlled by securities lawyers). While we can accept that premise, its appli-

cation to the Berglund Group's objection does not alleviate our concerns. Holland's sophistication will do little to overcome his susceptibility to a unique defense, that would render him inadequate as a class representative.

The Maguire Group also attests that Holland is not a market maker in Green Tree stock, but only in Green Tree options. Rather, Holland purchases Green Tree stock for himself, "on the same basis as any other investor." *Wilson Declaration, Hedlund Aff.*, Ex. E. The Berglund Group suggests that Holland's Green Tree stock purchases are a hedge against losses that may arise from dealing with Green Tree options as a market maker. There is nothing in the Record, one way or the other, which reveals Holland's strategy in purchasing stocks. Nevertheless, in our view, one who buys Green Tree stock, even as a hedge against other investments, still presumably relies on the integrity of the market in selecting that hedge. Where, as here, there is no evidence to the contrary, we cannot conclude that Holland relied on something other than the market's integrity in purchasing Green Tree stock. Therefore, the Berglund Group has failed to establish that Holland is subject to a unique defense that would prevent him from adequately representing the interests of the putative class of stockholders.

Accordingly, finding that six members of the smaller Maguire Group have established their capacities to fairly and adequately represent the interests of the putative class, we grant their Motion to be appointed Lead Plaintiffs.[12] In doing so, we acknowledge that, as a palliative, we do not suggest that our appointment process will guarantee Congress' goal that the Lead Plaintiffs, and not their legal counsel, will control the progress and proper disposition of their legal claims. All we can assure is that the Lead Plaintiffs and, correlatively, their Lead Counsel, are fully informed of our expectation that the will of Congress, as expressed in the FSRLA,

---

**12.** Since we have rejected the full Maguire Group as appropriate Lead Plaintiffs, we direct that the Group reformulate its subset of Lead Plaintiffs to include no more than twenty members who satisfy the requisite showings, and who represent a cross-section of the class of stock-

holders, including both sophisticated investors like Holland, and smaller investors. Those identities of those Lead Plaintiffs, together with their certifications, should be filed with the Court **by no later than twenty days after the filing of this Order.**

will be effectuated in the conduct of this litigation. If our expectation is unfulfilled, we are not powerless to act.

■ Lastly, we consider the request of the Maguire Group that we appoint the four law firms, which they have nominated, to serve as Lead Counsel. The Maguire Group proposes that the firm of Heins, Mills & Olson would serve as "Liaison Counsel,"[13] and would also have duties, which would be coextensive with the other three law firms, as Lead Counsel. The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Title 15 U.S.C. § 78u–4(a)(3)(B)(v)*. The Court has reviewed the resumes of the nominated firms, and of the involved attorneys, and we find them to be highly qualified both generally, and in the specific context of private class actions under the Federal securities laws.

There has been the some suggestion that the proposed leadership structure is, like the class structure itself, too distended to efficiently manage the prosecution of this action. As pertinent, the *Manual for Complex Litigation* cautions against litigating by committee:

> Because the appointment of committees of counsel can lead to substantially increased costs, they should not be made unless needed; a need is most likely to exist in cases in which the interests and positions of group members are sufficiently dissimilar to justify giving them representation in decision making. *** Great care must be taken, however, to avoid unnecessary duplication of efforts and to control fees and expenses.
>
> \* \* \* \* \* \*
>
> The functions of lead counsel may be divided among several attorneys, but the number should not be so large as to defeat the purpose of making such appointments.

*Manual for Complex Litigation 3rd § 20.221*, pp. 27–28.

While litigation by committee poses certain dangers to judicial economy—not to mention the interests of the proposed class of plaintiffs—it can retain certain benefits. Notably, in the context of securities litigation, where there is an ever present fear of lawyer-driven litigation, a cadre of law firms to lead the action may enhance the likelihood of meaningful input from each of the constituent factions of plaintiffs, whose long- and short-term financial interests may vary. In our view, the proposed division of representative authority, while imposing some added measure of cost, comports with the overall interests of the putative class of stockholders.

■ b. *Lead Plaintiffs for the Options Action.* Having consolidated the Options Plaintiffs in a single action, we address their Motion for appointment as Lead Plaintiff. In their Memorandum, the Options Plaintiffs claim that they have suffered financial losses totaling approximately $3.8 million, which would give them the largest financial stake in the consolidated Options Action. To this date, however, the Options Plaintiffs have yet to file a single certification, which evidences the Applicants' transactions, and the other requisite showings to serve as Lead Plaintiffs.

This appears to have been an oversight. In their informal Motion to be appointed Lead Plaintiffs of the Options Action, which was filed as a Memorandum of Law in response to the other Plaintiffs' Motions, see, *Gamerdinger v. Green Tree Financial Corp.*, Civ. No. 98–598 (JRT/RLE) [Docket No. 5], the Options Plaintiffs attached only a firm resume. Nevertheless, the Options Plaintiffs asserted their members' large financial stake in the litigation, their adequacy, and their typicality, without any factual foundation for the representations made. In its opposition to the Options Plaintiffs' Motion, the Maguire Group noted that it had yet to receive the Options Plaintiffs' certifications, but the Group did not urge a denial of the Motion on

---

**13.** Liaison Counsel is ordinarily charged with administrative matters, such as communications between the Court and other counsel, and convenes meetings of counsel, advises parties of developments in the case, and coordinates the activities and the positions of the class. Such counsel may act for the group in managing document depositories, and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the forum. *Manual for Complex Litigation 3rd § 20.221*, p. 27 (1995).

that ground.[14] To date, no party has called for the denial of the Options Plaintiffs' Motion for want of certification.

As we have explained, while not expressly required by the terms of the PSLRA, all proposed Lead Plaintiffs must provide certifications of their eligibility in connection with a Lead Plaintiff Motion, in order to allow the Court to adjudge their financial interest in the litigation, and their capability of adequately representing the proposed class. We recognize, however, that the only Courts who have previously considered the issue, have concluded that a purported class member, who seeks to serve as a Lead Plaintiff, is not required to file a certification, pursuant to Section 78u–4(a)(2)(A), with his or her Motion for appointment. See, *Greebel v. FTP Software, Inc.,* supra at 61–62; *Blaich v. Employee Solutions, Inc.,* supra, 1997 WL 842417, at *2. Even though we have concluded that certifications are an essential foundation for assessing a proposed Lead Plaintiff's capacity to be the "most adequate plaintiff," Congress did not set a specific timetable for potential Lead Plaintiffs, who are not named in the Complaint, to provide their sworn certifications. Therefore, we will afford them twenty days, after the filing of this Order, to rectify their oversight, and to file the certifications which we find essential to our selection of Lead Plaintiffs.

Through this date, it appears that the Options Plaintiffs are the only Plaintiffs who seek to serve as Lead Plaintiffs in the Options Action, and their adequacy and typicality as representatives for the proposed class of options traders has not been called into question. Therefore, we grant the Options Plaintiffs' Motion to serve as Lead Plaintiffs in the Options Action, conditioned on their filing the noted certifications **by no later than 20 days from the date of this Order.**

Likewise, we grant the Options Plaintiffs' Motion for approval of their selection of Lead Counsel. We have reviewed the dossiers that the law firms have provided the Court, and find both firms to be highly qualified both generally, and in the specific context of private class actions under the Federal securities laws. No basis appears for rejecting the Options Plaintiffs' choice of law firms to serve as Lead Counsel, and, therefore, we ratify the selection that they have made.

NOW, THEREFORE, It is—

ORDERED:

1. That the Berglund and Maguire Groups' Motions to Consolidate [Docket No. 7 in Civ. No. 97–2666 (JRT/RLE); Docket No. 2 in Civ. No. 97–2679; Docket Nos. 2, 7 in Civ. No. 97–2684; Docket No. 3 in Civ. No. 97–2712 (JRT/RLE); Docket No. 4 in Civ. No. 97–2764 (JRT/RLE); Docket No. 4 in Civ. No. 97–2847 (JRT/RLE); Docket No. 3 in Civ. No. 97–2887 (JRT/RLE); Docket No. 3 in Civ. No. 97–2894 (JRT/RLE); Docket No. 4 in Civ. No. 97–2899 (JRT/RLE); Docket No. 3 in Civ. No. 98–0015 (JRT/RLE); Docket No. 2 in Civ. No. 98–26 (JRT/RLE); Docket No. 6 in Civ. No. 98–36 (JRT/RLE); Docket No. 3 in Civ. No. 98–41 (JRT/RLE); Docket No. 4 in Civ. No. 98–67 (JRT/RLE); Docket No. 4 in Civ. No. 98–88 (JRT/RLE); Docket No. 5 in Civ. No. 98–122 (JRT/RLE); Docket No. 4 in Civ. No. 98–123 (JRT/RLE); Docket No. 3 in Civ. No. 98–124 (JRT/RLE); Docket No. 3 in Civ. No. 98–143 (JRT/RLE); Docket No. 4 in Civ. No. 98–501 (JRT/RLE); Docket No. 3 in Civ. No. 98–533 (JRT/RLE); Docket No. 3 in Civ. No. 98–562 (JRT/RLE); Docket No. 4 in Civ. No. 98–574 (JRT/RLE) ] are GRANTED to the extent that Civ. Nos. 97–2666, 97–2679, 97–2684, 97–2712, 97–2764, 97–2847, 97–2887, 97–2894, 97–2899, 98–15, 98–26, 98–36, 98–41, 98–67, 98–88, 98–122, 98–123, 98–124, 98–143, 98–501, 98–533, 98–562, 98–574, 98–598, 98–943, 98–977, and 98–1162 are hereby consolidated into two consolidated actions—one on behalf of Plaintiffs claiming Green Tree stock losses; the other on behalf of Plaintiffs claiming Green Tree options losses.

2. That, hereinafter, the caption of the consolidated stockholders' actions shall be as follows:

---

14. In light of the fact that the Maguire Group initially provided incomplete certifications for several of its members, and its argument that certifications were not required for such a Motion, the Maguire Group could not credibly argue a contrary position with respect to the omissions of the Options Plaintiffs.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re Green Tree Financial Corp. Stock Litigation     Master File No. 97-1666 (JRT/RLE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3. That, hereinafter, the caption of the consolidated options actions shall be as follows:

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re Green Tree Financial Corp. Options Litigation     Master File No. 97-2679 (JRT/RLE)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

4. That a copy of this Order shall be docketed in all of the constituent files, but the files in this consolidated action shall be maintained under Master File Nos. 97–2666 (JRT/RLE) and 97–2679 (JRT/RLE), and all Orders, pleadings, Motions and other documents will, when filed and docketed in the Master Files, be deemed to be filed and docketed in each applicable constituent files.

5. That, within 30 days after the entry of this Order, the Plaintiffs in the stockholders action, Master File No. 97–2666 (JRT/RLE), shall file a "Consolidated Amended Complaint," and serve it upon counsel for the Defendants, and that, within 45 days after service, the Defendants shall serve and file an Answer, or otherwise respond, to the Consolidated Amended Complaint.

6. That, within 30 days after the entry of this Order, the Plaintiffs in the options action, Master File No. 97–2679 (JRT/RLE), shall file a "Consolidated Amended Complaint," and serve it upon the Defendants, and that, within 45–days after service, the Defendants shall serve and file an Answer, or otherwise respond, to the Consolidated Amended Complaint.

7. That the Berglund Group's Motion to be Appointed Lead Plaintiff [Docket No. 2 in Civ. No. 2764 (JRT/RLE)] is DENIED.

8. That the Maguire Group's Motion to be Appointed Lead Plaintiff [Docket No. 7 in

Civ. No. 97–2666 (JRT/RLE); Docket No. 2 in Civ. No. 97–2679; Docket No. 7 in Civ. No. 97–2684; Docket No. 3 in Civ. No. 97–2712 (JRT/RLE); Docket No. 4 in Civ. No. 97–2764 (JRT/RLE); Docket No. 4 in Civ. No. 97–2847 (JRT/RLE); Docket No. 3 in Civ. No. 97–2887 (JRT/RLE); Docket No. 3 in Civ. No. 97–2894 (JRT/RLE); Docket No. 4 in Civ. No. 97–2899 (JRT/RLE); Docket No. 3 in Civ. No. 98–0015 (JRT/RLE); Docket No. 2 in Civ. No. 98–26 (JRT/RLE); Docket No. 6 in Civ. No. 98–36 (JRT/RLE); Docket No. 3 in Civ. No. 98–41 (JRT/RLE); Docket No. 4 in Civ. No. 98–67 (JRT/RLE); Docket No. 4 in Civ. No. 98–88 (JRT/RLE); Docket No. 5 in Civ. No. 98–122 (JRT/RLE); Docket No. 4 in Civ. No. 98–123 (JRT/RLE); Docket No. 3 in Civ. No. 98–124 (JRT/RLE); Docket No. 3 in Civ. No. 98–143 (JRT/RLE); Docket No. 4 in Civ. No. 98–501 (JRT/RLE); Docket No. 3 in Civ. No. 98–533 (JRT/RLE); Docket No. 3 in Civ. No. 98–562 (JRT/RLE); Docket No. 4 in Civ. No. 98–574 (JRT/RLE)] is GRANTED, with respect to the consolidated action on behalf of persons claiming losses in stock transactions, Master File No. 97–2666 (JRT/RLE), as provided in this Order.

9. That, **no later than 20 days after the filing of this Order**, the Maguire Group will identify the grouping of twenty persons, inclusive of the six identified in the text of this Order, to serve as Lead Plaintiffs, and will file the requisite certifications of those per-

sons, whose certifications have not been previously filed.

10. That the Maguire Group's Motion to Appoint Heins, Mills & Olson P.L.C.; Milberg, Weiss, Bershad, Hynes & Lerach LLP; Barrack, Rodos & Bacine; and Stull, Stull & Brody as Lead Counsel [Docket No. 7 in Civ. No. 97–2666 (JRT/RLE); Docket No. 2 in Civ. No. 97–2679; Docket No. 7 in Civ. No. 97–2684; Docket No. 3 in Civ. No. 97–2712 (JRT/RLE); Docket No. 4 in Civ. No. 97–2764 (JRT/RLE); Docket No. 4 in Civ. No. 97–2847 (JRT/RLE); Docket No. 3 in Civ. No. 97–2887 (JRT/RLE); Docket No. 3 in Civ. No. 97–2894 (JRT/RLE); Docket No. 4 in Civ. No. 97–2899 (JRT/RLE); Docket No. 3 in Civ. No. 98–0015 (JRT/RLE); Docket No. 2 in Civ. No. 98–26 (JRT/RLE); Docket No. 6 in Civ. No. 98–36 (JRT/RLE); Docket No. 3 in Civ. No. 98–41 (JRT/RLE); Docket No. 4 in Civ. No. 98–67 (JRT/RLE); Docket No. 4 in Civ. No. 98–88 (JRT/RLE); Docket No. 5 in Civ. No. 98–122 (JRT/RLE); Docket No. 4 in Civ. No. 98–123 (JRT/RLE); Docket No. 3 in Civ. No. 98–124 (JRT/RLE); Docket No. 3 in Civ. No. 98–143 (JRT/RLE); Docket No. 4 in Civ. No. 98–501 (JRT/RLE); Docket No. 3 in Civ. No. 98–533 (JRT/RLE); Docket No. 3 in Civ. No. 98–562 (JRT/RLE); Docket No. 4 in Civ. No. 98–574 (JRT/RLE) ] is GRANTED.

11. That the Options Plaintiffs' Motion to be Appointed Lead Plaintiffs [Docket No. 5 in Civ. No. 98–598], in the consolidated action on behalf of persons claiming options losses, Master File No. 97–2679 (JRT/RLE), is provisionally GRANTED, pending the Court's receipt and approval of their certifications, as described in Title 15 U.S.C. § 78u–4(a)(2)(A). The Options Plaintiffs shall submit their certifications **by no later than 20 days from the date of this Order.**

12. That the Options Plaintiffs' Motion to Appoint Pomerantz, Haudek, Block & Grossman and Mansfield & Tanick as Lead Counsel [Docket No. 5 in Civ. No. 98–598] is provisionally GRANTED, pending the Court's receipt and approval of their certifications, as described in Title 15 U.S.C. § 78u–4(a)(2)(A).

13. That the Maguire Group's Motion for Leave to File a Reply Memorandum [Docket

No. 19 in Civ. No. 97–2666 (JRT/RLE); Docket No. 10 in Civ. No. 97–2679 (JRT/RLE); Docket No. 17 in Civ. No. 97–2684 (JRT/RLE); Docket No. 11 in Civ. No. 97–2712 (JRT/RLE); Docket No. 11 in Civ. No. 97–2674 (JRT/RLE); Docket No. 11 in Civ. No. 97–2847 (JRT/RLE); Docket No. 13 in Civ. No. 97–2887 (JRT/RLE); Docket No. 11 in Civ. No. 97–2894 (JRT/RLE); Docket No. 12 in Civ. No. 97–2899 (JRT/RLE); Docket No. 11 in Civ. No. 98–15 (JRT/RLE); Docket No. 9 in Civ. No. 98–26 (JRT/RLE); Docket No. 13 in Civ. No. 98–36 (JRT/RLE); Docket No. 11 in Civ. No. 98–41 (JRT/RLE); Docket No. 11 in Civ. No. 98–67 (JRT/RLE); Docket No. 11 in Civ. No. 98–88 (JRT/RLE); Docket No. 12 in Civ. No. 98–122 (JRT/RLE); Docket No. 12 in Civ. No. 98–123 (JRT/RLE); Docket No. 11 in Civ. No. 98–124 (JRT/RLE); Docket No. 12 in Civ. No. 98–143 (JRT/RLE); Docket No. 11 in Civ. No. 98–501 (JRT/RLE); Docket No. 11 in Civ. No. 98–533 (JRT/RLE); Docket No. 11 in Civ. No. 98–562 (JRT/RLE); Docket No. 12 in Civ. No. 98–574; Docket No. 6 in Civ. No. 98–598 (JRT/RLE) ] is GRANTED.