## In re LERNOUT & HAUSPIE SECURITIES LITIGATION [1]

No. CIV. A. 00–11589–PBS, 00–CV–11621, 00–CV–11622, 00–CV–11669, 00–CV–11749, 00–CV–11841, 00–CV–11880, 00–CV–12044, 00–CV–12045, 00–CV–12063, 00–CV–12548, 00–CV–12552, 00–CV–12554, 00–CV–12555, 00–CV–12561.

United States District Court, D. Massachusetts.

Feb. 26, 2001.

1. On December 15, 2000, the following cases were consolidated pursuant to Fed.R.Civ.P. 42(a) to form this Consolidated Action: 00–CV–11589, 00–CV–11621, 00–CV–11622, 00–CV–11669, 00–CV–11749, 00–CV–11841, 00–CV–11880, 00–CV–12044, 00–CV–12045, 00–CV–12063, 00–CV–12548, 00–CV–12552, 00–CV–12554, 00–CV–12555, 00–CV–12561. A

**40**

Master File is hereby established for this proceeding and shall be captioned, *In re Lernout & Hauspie Securities Litigation*, 00–11589–PBS.

Glen DeValerio, Michael G. Lange, Berman, DeValerio & Pease, Boston, MA, for Sandra Balan, Daniel J. Perrington, Steven Roskin, Larry A. Rosenmann, Lee Herskowitz, Gary C. Downey, Samer M. Ali and Gabriel, Inc. Pension and Profit Sharing Plan.

Glen DeValerio, Michael G. Lange, Jeffrey C. Block, Alicia M. Duff, Berman, DeValerio & Pease, Boston, MA, Paul J. Geller, Cauley & Geller, LLP, Boca Raton, FL, Gene Cauley, Cauley & Geller, Little Rock, AR, Ralph M. Stone, Kenneth A. Ricken, Shalov Stone & Bonner, New York City, for Hans A. Quaak, Karl Leibinger and Attilio Po.

Glen DeValerio, Michael G. Lange, Jeffrey C. Block, Alicia M. Duff, Berman, DeValerio & Pease, Boston, MA, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, for Stephen N. Maskaleris.

Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, for Marguerite J. Cammann, Sylvia B. Piven, Irene Godfrey, Martin E. Kofman, and Michael Wytanis.

Stuart H. Savett, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, Thomas G. Shapiro, Shapiro, Haber & Urmy LLP, Barbara A. Podell, Savett, Frutkin, Podell & Ryan, Philadelphia, PA, for Thomas H. Bown, II.

Glen DeValerio, Michael G. Lange, Jeffrey C. Block, Berman, DeValerio & Pease, Boston, MA, Richard A. Lockridge, Lockridge, Grindal, Nauen P.L.L.P., Minneapolis, MN, Paul J. Geller, Cauley & Geller, LLP, Boca Raton, FL, for Matthias Weis.

Glen DeValerio, Michael G. Lange, Jeffrey C. Block, Berman, DeValerio & Pease, Boston, MA, Lisa J. Rodriguez, Rodriguez & Richards, LLC, Haddonfield, NJ, Michael D. Donovan, Donovan Miller, LLC, Philadelphia, PA, Thomas L. Earp, Westmont, NJ, for Anthony Drummond.

M. Frederick Pritzker, James W. Stoll, Cheryl B. Pinarchick, Brown Rudnick Freed & Gesmer, P.C., Boston, MA, for Gaston Bastiaens, Carl Dammekens, Lernout & Hauspie Securities Litigation.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### Introduction

This involves the designation of the lead plaintiff in fifteen consolidated class actions against Lernout & Hauspie ("Lernout") under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(B). The proposed lead plaintiff group consists of Hans A. Quaak ("Quaak"), Attilio Po ("Po"), and Karl Leibinger ("Leibinger") (collectively, the "Quaak Group"). The other proposed lead plaintiff initially was Thomas Bown ("Bown"). On February 16, 2001, after a spirited battle and voluminous filings, Bown suddenly withdrew his request to be lead plaintiff, as well as his opposition to the designation of the Quaak Group.[2] After hearing, I appoint the Quaak Group as lead plaintiff.

### Procedural History

On August 9, 2000, Sandra Balan filed a class action against Lernout; its former

---

**2.** The Court did not receive the withdrawal until after this opinion was in final form. Despite the withdrawal, the Court must still exercise independent judgment under the PSLRA. Fortunately, the withdrawal was simply a harbinger of the Court's determination. In the future, a phone call notifying the Court of new developments would be appreciated to avoid a needless waste of judicial resources.

President and Chief Executive Officer Gaston Bastiaens; and its Chief Financial Officer, Carl Dammekens, in the District of Massachusetts. On the same day, Stephen N. Maskaleris filed a class action against Lernout and Bastiaens in the Eastern District of Pennsylvania.

Lernout is a Belgian corporation, which trades on the NASDAQ and has executive offices in Burlington, Massachusetts. It is a speech-recognition software firm. On November 29, 2001, it filed a petition for a Chapter 11 bankruptcy.[3]

Both complaints allege that the defendants knowingly and/or recklessly disseminated false and misleading statements, which materially inflated the market prices of Lernout stock during the class period (December 28, 1999 through August 7, 2000) in violation of Sections 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. There is also a claim under Section 20(a), 15 U.S.C. § 78t(a). According to these complaints, Lernout had misrepresented the financial success and record revenues of the company as well as the existence of profitable strategic alliances in South Korea.

Subsequent to these two initial filings, nine other class actions were filed in the District of Massachusetts and four others in the Eastern District of Pennsylvania. After procedural skirmishing, on November 8, 2000, the United States District Court for the Eastern District of Pennsylvania allowed Defendant's Motion to Transfer and the Pennsylvania Cases were transferred to the District of Massachusetts on December 11, 2000. All cases were consolidated on December 15, 2000 pursuant to Fed.R.Civ.P. 42(a).

### *Discussion*

1. *Standards for Designating Lead Plaintiff*

The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class." 15 U.S.C. § 78u–4(a)(3)(B)(i). The statute specifies three criteria which trigger a rebuttable presumption:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

---

**3.** Defendants point out that pursuant to the automatic stay imposed by section 362 of the United States Bankruptcy Code (11 U.S.C. § 362) all litigation against Lernout was stayed by the bankruptcy filing. However, although defendants' counsel appeared at the hearing on designation of lead counsel, they did not oppose designation of lead counsel with respect to the corporate defendant. Indeed, such designation seems appropriate to protect the class interests in the bankruptcy proceeding.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The PLSRA also provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).

The purpose of this provision of the PLSRA is to establish new procedures for the appointment of the lead plaintiff and lead counsel in securities class actions. H.R. Conf. Rep. No. 104–369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731). The legislation responds to congressional concern that "the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint," as well as its desire "to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff." *Id.* at 33–34. This is predicated upon the conclusion that "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *Id.* at 34. Expressing a jaundiced view of "unsupervised" plaintiffs' attorneys, the Conference Committee was most hopeful that "the plaintiff will choose counsel rather than, as is true today, counsel choosing the plaintiff." *Id.* at 35. One key aim was "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation." S.Rep. No. 104–98, at 4, reprinted in 1995 U.S.C.C.A.N. 679, 683.

### 2. *Quaak Group*

The Quaak Group claims that it has met all three criteria triggering the rebuttable presumption of adequacy. First, there is no dispute that it has filed a timely and adequate motion pursuant to § 78u–4(a)(3)(A)(i) to be appointed lead plaintiff. Also, there is no dispute that the notice requirements of Section 21D(a)(3)(A)(i) of the PLSRA have been met.

Second, although the parties dispute the exact financial loss of each plaintiff, plaintiff Leibinger has the largest financial interest among the four proposed lead plaintiffs under any method for the calculation of loss. Leibinger has submitted evidence that his loss is $665,000 while Bown's loss is at most $397,728. There is also no dispute that the aggregated financial loss of the Quaak Group far exceeds the financial loss of proposed lead plaintiff Bown. Nonetheless, plaintiff Bown contended that the Quaak Group is a "lawyer-driven" group comprised of three foreigners with no prior relationship and that the difference between his financial loss and Leibinger's is insignificant.

Courts have differed on whether the statute permits a group of unrelated persons to serve as lead plaintiff. Some courts have condemned such a grouping of unrelated persons. *See e.g In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 813 (N.D.Ohio 1999) (requiring lead plaintiff groups to consist of "more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney"); *Aronson v. McKesson,* 79 F.Supp.2d 1146, 1152–1154 (N.D.Cal.1999) (adopting a narrow interpretation of the term "group" based on the legislative intent of the PSLRA and defining group as "a small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person."); *In re Waste Management, Inc. Sec. Litig.,* 128 F.Supp.2d 401, 413

(S.D.Tex.2000) ("requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment."); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417–418 (D.N.J.1998) (noting that "[w]hile the PSLRA refers to 'a person or group of persons' as capable of serving as the Lead Plaintiff, the surrounding statutory language forecloses the appointment of multiple groups or multiple persons not part of a cohesive group.").

Other courts, including ones in this circuit, have not read a prior relationship rule into the PSLRA. *See e.g. In re Tyco Int'l, Ltd. Sec. Litig.*, MDL No. 00–MD–1335–B, 2000 WL 1513772, *4, 2000 U.S. Dist. LEXIS 13390, *16 (D.N.H. Aug. 17, 2000) (appointing three lead plaintiffs and noting that "while a group comprised of many small shareholders might be unwieldy and lack the proper incentive to serve as an effective lead plaintiff...a group that consists of a small number of large shareholders should be capable of managing this litigation and providing direction to class counsel."); *see also In re Carematrix Sec. Litig.*, C.A. No. 99–12318–MLW, slip op. at 17 (D.Mass.2000) (Wolf, J.) (allowing two parties with no prior relationship to serve as lead plaintiffs because the court found that "such relationship is not required and does not preclude their effectiveness as lead plaintiffs."); *Levine v. Lycos, Inc.*, C.A. No. 99–CV–10394–EFH, slip op. at 10 (D.Mass.1999) (Harrington, J.) (appointing ten lead plaintiffs); *Nager v. Websecure, Inc.*, Civ. Action No. 97–10662–GAO, 1997 WL 773717, *1, 1997 U.S. Dist. LEXIS 19601, *3 (D.Mass. Nov. 26, 1997) (O'Toole, J.) (finding nine plaintiffs to have met the statutory requirements to be appointed lead plaintiff); *Greebel v. FTP Software Inc.*, 939 F.Supp. 57, 64–65 (D.Mass.1996) (finding three plaintiffs to have met the statutory requirements to be appointed

lead plaintiff); *In re First Union Corp., Sec. Litig.*, 3:99CV237–MCK, 2000 U.S.Dist. LEXIS 2267, *12 (W.D.N.C. Jan. 27, 2000) (appointing four lead plaintiffs and noting that "[t]he use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the knowledge and experience, but also of the resources of...a costly and time consuming litigation."); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999) (appointing three lead plaintiffs and noting that "the SEC also does not suggest an interpretation of 'group of persons' that would erect a per se bar against aggregating previously unrelated investors. However...a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers."); *In re Advanced Tissue Sci. Sec. Litig.*, 184 F.R.D. 346, 352–53 (S.D.Cal.1998) (denying motion to allow lead plaintiff group to consist of 250 members but approving a motion to appoint six members); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 44–46 (S.D.N.Y.1998) (allowing three lead plaintiffs and holding that "the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff").

■ The weight of the case law suggests that the trial court has the discretion to designate a triumvirate of unrelated persons as a lead plaintiff group pursuant to 15 U.S.C. § 78u–4(a)(3)(B). Nonetheless, a Court should not blindly aggregate the losses of unrelated plaintiffs to confer lead plaintiff status on a group without considering whether the grouping is sufficiently coherent to control the litigation. Here, in a sense, the Court's task is made somewhat easier by the undisputed evidence that Leibinger has by far the most significant financial stake, even without ag-

gregation. Nonetheless, the Court should still evaluate the structure of the group to ensure that the lead plaintiffs, not the attorneys, are in the driver's seat. One court succinctly described this multi-factor analysis as follows:

> A third approach, and that adopted and followed in this case, relies on no single factor, but instead requires a "group" to "explain and justify its composition and structure to the court's satisfaction".... Under this approach, a court may consider all relevant factors, such as "descriptions of [the group's] members, including any pre-existing relationships among them; an explanation of how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation."
> ... This approach, which relies on no single factor, allows a district court maximum flexibility to select a lead plaintiff who will best represent the interests of the class and exercise control of the litigation.

*In re Microstrategy, Inc. Sec. Litig.*, 110 F.Supp.2d 427, 434–435 (E.D.Va.2000).

■ The question is whether the Quaak Group comprised of foreign citizens is able to represent adequately the interest of the plaintiffs. Since English is not the native language of the three members of the Quaak Group, and since they have no prior relationship, they must demonstrate that they are capable of managing the litigation as a cohesive group.

The Court agrees that a multilingual European group speaking German, Dutch and Italian as primary languages might not be the ideal group to spearhead federal litigation in the United States. However, there are certain factors which mitigate against these concerns. Leibinger, a German, has worked in the United States, speaks English well, and understands the American legal system. He sometimes travels here on business. Dr. Quaak, an oral surgeon who resides in Amsterdam, is fluent in English. Po resides in Carp, Italy, where he is a consultant to kitchen designers and manufacturers. He also speaks English. (See Lange Aff. ¶ 2, 4) This litigation takes place in three continents and involves a European company with bankruptcy proceedings in Belgium and the United States. Finally, (with a bit of judicial prodding) the three named plaintiffs, Quaak, Po and Leibinger, met personally to discuss the litigation and potential strategies and have done so by communicating fluently with their attorneys. In so doing, they have reached a viable plan for managing the case and they further understand that they may be required to travel from Europe to the United States for depositions and a trial. Indeed, their meeting in Zurich, Switzerland on January 11, 2001 spawned a relatively detailed litigation strategy which the Quaak Group has filed with this Court *in camera*. This strategy includes a method for handling the bankruptcy case being litigated in Belgium and protecting the class interests in the bankruptcy proceedings here. Thus, plaintiffs are no longer a virtual lead plaintiff group operating solely by fax, e-mail, and telephone but have demonstrated an ability to work effectively in person together. They have also agreed to regular conference calls every two weeks.

### 3. *Adequacy*

■ Third, the plaintiff must demonstrate [4] that it "otherwise satisfies the requirements of the Rules of Federal Civil

---

**4.** This preliminary conclusion is without prejudice to defendants' right to contest these issues. *See Gluck v. CellStar Corp.,* 976 F.Supp. 542, 547 (N.D.Tex.1997).

Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). These requirements are found in F.R.C.P. 23(a) which requires:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Only the last two prongs, typicality and adequacy, need to be satisfied for purposes of this inquiry. *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 407 n. 8 (D.Minn.1998); *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 WL 1513772 at *5.

■ The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the "same events or course of conduct" and involve the same legal theory as do the claims of the rest of the class. *In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1532 (D.Mass. 1991). For the plaintiff to meet this burden, it need not show identical claims. *Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 325 (D.Mass.1997).

The Quaak Group argues that its claims are typical of the class because all fifteen class actions filed in this case involve allegations that Lernout and one or two managers disseminated false and misleading information concerning various financial statements and strategic alliances in Korea which inflated Lernout's stock price.

To meet the adequacy requirement, plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation. *See Adair v. Sorenson*, 134 F.R.D. 13, 18 (D.Mass.1991). There is no indication from the record that the Quaak Group is in conflict with any plaintiffs on the substance of the case. Furthermore, the firm resumes from Berman DeValerio & Pease LLP, Cauley & Geller LLP and Shalov Stone & Bonner, the firms selected by the Quaak Group, indicate the firms are well-experienced in these types of actions.

In rebuttal, Bown had argued that the Quaak Group, or one or two of its members, may have purchased stock on the EASDAQ as opposed to the NASDAQ and therefore defendants may assert defenses unique to this European group. However, Quaak and Leibinger purchased all of their shares of Lernout on the NASDAQ and Po purchased more than half of his shares on the NASDAQ. As such, based on this record, these three plaintiffs and the Quaak Group as a whole appear to have standing to sue.

### 4. *Class Counsel*

■ The final question is whether to appoint three law firms as class counsel. *Nager v. Websecure*, 1997 WL 773717 at *1. (D.Mass.1997) Generally, I would have the concern that three law firms would trip over each other in litigating the action. However, in light of the complexity of this litigation, the amount of money at stake, the parties involved, the pendency of a Chapter 11 filing and a bankruptcy proceeding in Belgium, and the three distinct continents (Europe, North American and Asia) involved, the plaintiff class may need the resources of three firms to handle such litigation. Also, counsel has presented a detailed plan *in camera* dividing up the workload which was approved by the named plaintiffs.

The statute provides that the lead plaintiff selects class counsel subject to the court's approval. § 78u–4(a)(3)(B)(v). While the Court should not be a rubber-

stamp, it should give the lead plaintiff group's choice some weight. Here, each named plaintiff selected one of the proposed law firms to represent him, and the group has ratified all three firms. Accordingly, I approve the selection and retention of Berman, DeValerio & Pease LLP, Cauley & Geeler, LLP and Shalov Stone & Bunner as co-lead counsel.[5]

### ORDER

The motion to appoint the Quaak Group, DOCKET # 2, is **ALLOWED**. The motion to appoint Thomas Bown as lead plaintiff, DOCKET # 6, was withdrawn. A Master File is hereby established for this Consolidated Action and shall be captioned, *In re Lernout & Hauspie Securities Litigation,* 00–11589–PBS.

---

5. It is unlikely that the number of attorneys will increase the amount of attorneys fees because of the limitation in the PLSRA of total attorneys fees to "a reasonable percentage of the amount of damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. § 78u–4(a)(6).