Donald SMITH, et al., Plaintiffs,

v.

SUPREMA SPECIALTIES, INC.,
et al., Defendants.

Judith Graham, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

David Green, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Gregory Harris, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Murray Notkin, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Teachers' Retirement System of
Louisiana, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Ronald Oliver, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Stoneridge Investment Partners,
et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Rena Nadoff, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Stanley Sved, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Scott Walls, et al., Plaintiffs,

v.

Suprema Specialties, Inc.,
et al., Defendants.

Civ. Action Nos. 02–CV–168 (WHW), 02–CV–201 (DRD), 02–CV–329 (WHW), 02–CV–334 (WHW), 02–CV–335 (WHW), 02–CV–499 (WHW), 02–CV–550 (WHW), 02–CV–661 (WHW), 02–CV–672(WHW), 02–CV–697 (WHW), 02–CV–766 (WHW).

United States District Court,
D. New Jersey.

July 1, 2002.

Andrew Eckstein, Michael Z. Brownstein, Kathryn (Katy) L. Saurack, Blank

Rome Tenzer Greenblatt LLP, New York, NY, Counsel for Suprema Specialties, Inc. (by First Class Mail).

A. Ross Pearison, Sills Cummis Radin Tischman Epstein & Gross, Newark, NJ, Counsel for Defendant Mark Cocchiola (by First Class Mail).

Nancy E. Delaney, Pamela J. Labaj, Curtis, Mallet–Prevost, Colt & Mosle LLP, Newark, NJ, Counsel for Defendant Venechanos (by First Class Mail).

Edward T. Kole, Wilentz, Goldman & Spitzer, Woodbridge, NJ, Counsel for Defendant Estate of Paul Lauriero (by First Class Mail).

Michael J. Canavan, Pepper Hamilton LLP, Princeton, NJ, Counsel for Janney Montgomery Scott, Pacific Growth Equities, and Roth Capital Partners (by First Class Mail).

Joseph J. DePalma, Allyn Zissel Lite, Lite DePalma Greenberg & Rivas, Newark, NJ, Counsel for Plaintiffs Donald Smith, Ronald Oliver, Rena Nadoff, Gregory Harris, Judith Graham, David Green, Wyper Capital Management, Ascend Capital, the Hitel Group Inc. (by Federal Express).

Stuart L. Berman, Schiffrin & Barroway, LLP Bala, Cynwyd, PA, Samuel H. Rudman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Counsel for Plaintiffs Wyper Capital Management, Ascend Capital (by Federal Express).

James A. Harrod, Wolf Popper LLP, New York, NY, Counsel for Plaintiff The Hitel Group Inc. (by Federal Express).

Marvin Frank, Rabin & Peckel LLP, New York, NY, Counsel for Plaintiff Garden State Securities Group (by Federal Express).

Leo W. Desmond, Sparta, NJ, Counsel for Plaintiffs Scott Walls, Garden State Securities Group (by Federal Express).

Gary S. Graifman, Kantrowitz, Goldhammer & Graifman, Montvale, NJ, Counsel for Plaintiff Stoneridge Investment Partners LLC (by Federal Express).

Harvey Greenfield, Law Firm of Harvey Greenfield, New York, NY, Counsel for Plaintiff Stoneridge Investment Partners LLC (by Federal Express).

Andrew Robert Jacobs, Epstein Fitzsimmons Brown Ringle Gioia & Jacobs PC, Chatham Township, NJ, Counsel for Plaintiff Stanley Sved (by First Class Mail).

Fred T. Isquith, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Counsel for Plaintiff Stanley Sved (by First Class Mail).

William J. Pinilis, Kaplan, Kilsheimer & Fox LLP, Morristown, NJ, Counsel for Plaintiff Murray Notkin (by First Class Mail).

Harold G. Levison, Jonathan Minsker, Kasowitz Benson Torres & Friedman LLP, New York, NY, Seth R. Lesser, Bernstein Litowitz Berger & Grossman LLP, Lead Counsel, Hackensack, NJ, Counsel for Lead Plaintiff Teachers' Retirement.

Arthur S. Goldstein, Wolf & Samson, Roseland, NJ, Counsel for Defendants.

Diane J. O'Neil, Mendes & Mount, Esqs. Newark, NJ, Counsel for Defendants.

## OPINION

WALLS, District Judge.

The matter before this Court is the appointment of lead plaintiff and lead counsel in this securities class action against Suprema Specialties, Inc. ("Suprema" or the "Company") pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), each as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or the "Reform Act"). The following parties move for lead plaintiff and counsel, respectively (1) StoneRidge Investment Partners, LLC ("StoneRidge Investment"), and the Law Firm of Harvey Greenfield with the Law Office of Kantrowitz, Goldhamer & Graifman as co-lead counsel, (2) the Garden State Securities Group ("Garden State") and Rabin & Peckel, LLP, (3) Teachers' Retirement System of Louisiana ("Louisiana Teachers") and Bernstein Litowitz, Berger & Grossman, LLP ("Bernstein Litowitz"), (4) The Hitel Group Inc. ("Hitel Group") and Wolf Popper, LLP with Lite DePalma Greenberg & Rivas, LLC as liason counsel, and (5) Wyper Capital Management, LP and Ascend Capital who withdrew their motion in support of StoneRidge Investment. After considering the factual and legal arguments raised in the parties' papers and hearing oral argument, this Court appoints Louisiana Teachers as Lead Plaintiff and Bernstein Litowitz as Lead Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was brought on behalf of a class consisting of all persons and entities who purchased the common stock of Suprema in the open market and/or traceable to a prospectus and offering during the period of August 15, 2001 through December 21, 2001 (the "Class Period"). Currently pending before this Court are eleven related class action complaints [1] al-

---

1. On February 27, 2002, these actions were consolidated *sua sponte,* by Order of the Court.

leging violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules promulgated thereunder, including Rule 10b–5, 17 C.F.R. § 240.10b–5. Some complaints also allege violations of Sections 11, 12(a) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77(a)(2) and 77(o).

On August 15, 2001, Suprema issued a press release wherein the Company announced consolidated new sales, net income, and earnings per share for the year ended June 30, 2001, and made numerous positive statements concerning its net sales and net income. On or about September 23, 2001, Suprema filed its Annual Report (Form 10–K) for the year ended June 30, 2001 which contained similar positive statements. On November 14, 2001, Suprema filed its Quarterly Report (Form 10–Q) for the first quarter of 2001, ending on September 30, 2001 which reflected corporate growth. In each of these filings, Suprema assured the public and the Securities Exchange Commission ("SEC") that the financial statements were in conformance with Generally Accepted Accounting Principles ("GAAP"). However, the positive statements in each of the filings allegedly were materially false and misleading because they failed to truthfully and accurately disclose Suprema's net sales, net income, gross margins and working capital. As a result of these statements, the market price of Suprema's common stock was inflated.

On November 6, 2001, the Company filed a registration statement and prospectus with the SEC seeking the issuance of 4.05 million shares of common stock, of which 3.5 million shares were to be sold by the Company and 550,000 by certain selling shareholders. The offering would nearly double the number of outstanding shares of Suprema common stock from 5.7 million shares to 9.75 million shares. The Secondary Offering commenced on or about November 8, 2001. During the course of the Secondary Offering, Suprema raised in excess of $41 million. In addition, the following defendants sold stock in the Secondary Offering: Mark Cocchiola, Steven Venechanoa, and the Estate of Lauriero.

On Friday, December 21, 2001, just before the close of the market, Suprema issued a press release which revealed the resignations of its Chief Financial Officer and its Controller. The Company also announced that it "has initiated an internal investigation of its prior financial results and has instructed its auditors to review the Company's financial records." (Decl. of Erik Sandstedt, Ex. 4). Immediately thereafter, the National Association of Securities Dealers Automated Quotation System ("NASDAQ") halted trading of Suprema common stock, which was trading at $13, until Suprema satisfied their request to provide information concerning the internal investigation. On January 8, 2002, Suprema revealed the existence of material accounting irregularities. Subsequent reports indicated that substantial accounts receivable reported by the Company were false and illusory. In late February, Suprema announced that it had filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et. seq., in the United States Bankruptcy Court of the Southern District of New York. The Company also announced that its stock would be de-listed by NASDAQ. On or about March 1, 2002, Suprema was de-listed and since that time the Company's stock has been trading on the pink sheets for less than pennies per share.

## DISCUSSION

### I. Appointment of Lead Plaintiff

The Reform Act established new standards and procedures for selecting lead

plaintiffs in securities fraud class actions.[2] Under the Reform Act, courts are required to appoint a "lead plaintiff" at the initial stages of litigation. Specifically, the Reform Act instructs the court to "appoint as plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The Reform Act then creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[3]

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

This presumption may be "rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II). The Third Circuit has explained that in reviewing rebuttal evidence, courts should only consider whether anyone can prove that the pre-sumptive lead will not fairly and adequately represent the interests of the class and not whether another movant is preferable. *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir.2001).

■ To become the presumptive lead plaintiff, the movant need only make a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 924 (3d Cir.1992). To rebut the presumption, however, members of the putative class must submit proof that the presumptive lead plaintiff does not meet the requirements. *In re Cendant Corp. Litig.*, 264 F.3d at 263.

■ The typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Weiss v. York Hosp.*, 745 F.2d 786, 809 & n. 36 (3d Cir.1984). Where the claims asserted by the movant are based on the same legal theories and arise from the "same event or practice or course of conduct that gives rise to the claims of the class members," the typicality requirement is satisfied. *Grasty v. Amalgamated Clothing and Textile Workers Union, AFL–CIO, CLC*, 828 F.2d 123, 130 (3d Cir.1987).

---

**2.** Under the Reform Act, a plaintiff filing a new putative class action must provide notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(i). Within 60 days of publishing the notice, any member(s) of the group may apply to the Court to be appointed as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A) and (B). Finally, within 90 days after the publication of the notice the Court shall appoint as lead plaintiff the member(s) of the class that the Court determines to be the most capable of adequately representing the interests of class members. 15 U.S.C. § 78u–4(a)(3)(B).

**3.** Federal Rule of Civil Procedure 23(a) sets forth the following prerequisites for a class action: (1) numerosity, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) fair and adequate representation of the class by the representative parties. Fed. R. Civ.P. 23(a).

The "fairly and adequately" representing the class prong is modified by Section 21D of the Reform Act which directs the Court to limit its inquiry to the existence of any conflict with the interests of the other members of the class. This prong is satisfied when both the class representative and its attorney are capable of satisfying their obligations, and neither has interests conflicting with those of other Class members. *See Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). The Third Circuit explained that when assessing adequacy of representation, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig.,* 264 F.3d at 265 (*quoting Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988)).

Further, the Third Circuit instructs courts to consider two additional factors in making its initial adequacy assessment. First, the court should consider "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Id.* at 265–66. The second consideration is only applicable when the movant is a group, rather than an individual. Specifically, "[i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id.* at 266. Courts should also consider whether a movant group is too large to adequately represent the class. *Id.* Finally, the Third Circuit recognizes that there may be other reasons to justify a court's decision that the adequacy or typicality requirement has not been satisfied. *See id.* at 268.

In this case, as mentioned above, four plaintiffs or groups of plaintiffs move for lead plaintiff status. The first is StoneRidge Investment, an investment advisor and a group consisting of 22 unaffiliated organizations, that collectively held approximately 170,000 shares of Suprema stock and allegedly suffered losses of approximately $2,100,000 during the Class Period. The second is ·Garden State, a group of five individuals, that collectively held approximately 61,500 shares and allegedly suffered losses of $709,173. The third is Louisiana Teachers, an institutional investor, that owned 47,200 shares and allegedly suffered losses of $600,000. The final movant is the Hitel Group that held approximately 10,000 shares and allegedly suffered losses of $127,500.

### A. StoneRidge Investment

StoneRidge Investment, an investment advisor and investment management company focusing on institutional clients, seeks to be named sole lead plaintiff on behalf of the 22 entities for which it makes investment decisions, or alternatively as a lead plaintiff group with those entities. Although on the surface it appears that StoneRidge Investment has suffered the greatest financial loss,[4] it is not entitled to

---

4. It should be noted that Garden State objects to StoneRidge Investment's loss calculation alleging that it only sets forth the transactions of the 22 entities with which it was involved, and not all of the transactions involving Suprema stock. Although this Court recognizes that it is permitted to require StoneRidge Investment to ·submit additional docu-

presumptive lead plaintiff status under the Reform Act because it may not aggregate its losses with the 22 entities it represents. This Court finds that StoneRidge Investment may not bring the action on behalf of its clients because it did not function as a "single investor" and it has not submitted any evidence that it received permission to move on its clients' behalf. Further, this Court finds that StoneRidge Investment may not move as a "group" with its clients because it has not submitted a certification from any of the entities it represents and a group consisting of 22 independent entities is too large to work effectively.

StoneRidge Investment argues that as an investment manager it can represent the interests of the other 22 members of its group. This Court disagrees with StoneRidge Investment and finds that it is not a "single investor" and as such cannot bring the claim on behalf of its clients who were the actual owners of the stock. *See In re Bank One Shareholders Class Actions,* 96 F.Supp.2d 780, 783–84 (N.D.Ill. 2000) (holding that an investment manager, a hedge fund, with the largest aggregate losses was not the most adequate plaintiff because, among other things, it was not buying the stock in question for its own account, but rather for investors who were participants in the managers' funds).

While some courts have permitted "investment managers" to serve as lead plaintiffs, those courts generally have required showings that such money managers qualify as a "single person" under the Reform Act. *See e.g., In re Waste Mgmt., Inc.,* 128 F.Supp.2d 401 (S.D.Tex.2000) (holding that account manager may serve as lead plaintiff because it demonstrated that it functioned as a single investor); *Sakhrani v. Brightpoint, Inc.,* 78 F.Supp.2d 845, 846–

47 (S.D.Ind.1999) (stating that a group of "affiliated pension funds or mutual funds under common management" would satisfy requirements of PSLRA). In *In re Waste Mgmt. Inc.,* the institutional investor was under the direction of a single individual, the Treasurer of the State of Connecticut who was also the sole custodian and trustee for Connecticut. Also, neither Connecticut nor the underlying funds had its own board of trustees. The Court therefore determined that the institutional investor was "one person" under the Reform Act and as such was capable of adequate monitoring, coordination, and accountability in the litigation. 128 F.Supp. at 432.

Here StoneRidge Investment provided separate account management for individual investors, pension funds and profit sharing plans, who were the actual purchasers of Suprema stock. (Cert. of Gary S. Graifman, Ex. 3.) The 22 members of the StoneRidge Group are unaffiliated organizations who undoubtedly have their own boards of trustees, and are subject to varying laws, rules and regulations. Furthermore, StoneRidge Investment's clients are under the control of many different management structures. As such, StoneRidge Investment's various institutional clients can not be viewed as a "single person" under the Reform Act.

■   Further, where a court appoints an asset manager as lead plaintiff, the plaintiff should provide evidence that it "acts as attorney-in-fact for its clients and is authorized to bring suit to recover for, among other things, investment losses." *EZRA Charitable Trust v. Rent–Way Inc.,* 136 F.Supp.2d 435, 441 (W.D.Pa.2001). The clients' mere grant of authority to an investment manager to invest on its behalf

mentation as to their clients' holdings in Suprema, it does not request such materials because it is not entitled to lead plaintiff sta-

tus on other grounds. *See In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir.2001).

does not confer authority to initiate suit on its behalf. StoneRidge Investment has not provided the Court any indication that its members have given it authority to file lawsuits on its behalf. In fact, nothing before the Court even indicates that the members know that this action has commenced. There is little precedent on which this Court could rely to support the appointment of an asset manager as sole lead plaintiff without proper authorization.

In the alternative, StoneRidge Investment argues that it should be named lead plaintiff as a "group" with the entities it represents. Under Section 21D(a)(3)(B)(i) of the Exchange Act, the court may appoint an individual or group of individuals as lead plaintiff. Although the Reform Act does not limit the total number of proposed lead plaintiffs, the "rule of reason prevails." *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417 (D.N.J.1998)(*quoting Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 409 (D.Minn. 1998)). In a brief *amicus curiae*, the SEC issued the following interpretation:

> Construing the term "group of persons" in light of the language and purposes of the Act, a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers. The commission believes that ordinarily this should not be more than three to five persons, a number that will facilitate joint decision making and also help to assure that each group member has a sufficiently large stake in the litigation.

*In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C.1999) (*quoting* attached SEC brief *amicus curiae* at 16–17). Courts have also interpreted the Reform Act to limit the size of groups that may apply for lead plaintiff. *Id.* (refusing to appoint group of 20 investors as lead plaintiff). The Third Circuit has determined that al-

though there is no "hard-and-fast rule," courts should "generally presume that groups with more than five members are too large to work effectively," and therefore are not adequate lead plaintiffs. *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir.2001).

Here, as discussed, the 22 organizational investors are not affiliates with one another and they are under the control of many different management structures, none of which will monitor, coordinate, or be accountable for the instant litigation. Therefore, it would be impossible for such a group to speak with one voice and to effectively manage a litigation such as the instant action.

Further, to sustain a group of proposed lead plaintiffs, courts have established protocols to insure that the group will be effective. Such protocols include requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group. *See Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*, No. 00–3605, 2000 U.S. Dist. LEXIS 16712, at *13, 2000 WL 33173017, at *4–5 (D.N.J. Nov. 16, 2000)(appointing as lead plaintiff a group of five investors who submitted declarations describing past and continuing meetings between them and their counsel, and their involvement in the litigation so far); *In re Lernout & Hauspie Sec. Litig.*, 138 F.Supp.2d 39, 45 (D.Mass.2001)(appointing three lead plaintiffs where group submitted affidavits to show their ability to work together effectively). StoneRidge Investment's papers do not mention any contact between StoneRidge Investment and any of the 22 entities or contact among any of the 22 entities. Nor is there evidence that any of the entities are willing to accept the substantial obligations associated with being named lead plaintiff.

Additionally, the 22 entities did not satisfy the procedural requirements of the Reform Act because they neither submitted certifications nor moved individually for lead plaintiff status. The only certification submitted was from Joseph E. Stocke, Managing Director and Chief Investment Officer of StoneRidge Investment. (Cert. of Gary S. Graifman, Ex. 3.)

This Court concludes that StoneRidge Investment is not entitled to aggregate its claims with those of the 22 entities it represents because it may not bring suit on behalf of those 22 entities, and because it may not move as a "group". Without such aggregation, it does not have the largest financial interest. The greatest financial loss suffered by any individual member of its group is $325,000 and StoneRidge Investment itself only suffered a loss of $310,000. StoneRidge Investment is not entitled to lead plaintiff status. This Court now turns to Garden State's request to serve as lead plaintiff.

### B. Garden State Securities

■ Garden State, a "group" of five individuals[5] who purchased Suprema stock through the same broker at Garden State Securities, Inc., seek to aggregate their losses and be appointed lead plaintiff. This Court finds that Garden State will not adequately represent the Class because it has not demonstrated that it can work effectively as a group, it has not indicated that it negotiated attorneys fees on behalf of the class, and it does not assert any claims under the Securities Act, as do other proposed class members.

First, Garden State has not demonstrated that it can adequately function as a

"group" to represent the interests of the class. The Third Circuit has indicated its disagreement with cases that have held that the statute invariably precludes a group of unrelated individuals from serving as lead plaintiff. *In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir.2001) (*citing Sakhrani v. Brightpoint, Inc.,* 78 F.Supp.2d 845, 853 (S.D.Ind.1999); *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 811–16 (N.D.Ohio 1999); *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157–58 (S.D.N.Y.1997)). As the Third Circuit explained:

> The statute contains no requirement mandating that the members of a proper group be "related" in some manner; it requires only that any such group "fairly and adequately protect the interests of the class." We do not intimate that the extent of the prior relationship and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class," but it is this test, not one of relatedness, with which courts should be concerned.

*In re Cendant Corp. Litig.,* 264 F.3d at 266–67.

Among the factors to consider in determining whether the movant will "fairly and adequately" represent the interests of the class are: (I) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately

**5.** These five individuals are: (1) Keith C. Valentine who purchased 22,000 shares and suffered damages of $247,680; (2) Joseph Federici who purchased 11,500 shares and suffered damages of $142,375; (3) David B. Vafiades who purchased 10,000 shares and suffered damages $113,950; (4) William McEntee who purchased 9,000 shares and suffered damages of $105,750; and (5) Theodore I. Wishousky who purchased, with his family, 9,000 shares and suffered damages of $99,418.20.

represent the Class. *Id.* As example, the Circuit explained that if a movant "group" was created by the efforts of lawyers for the purpose of ensuring that it is named lead counsel, the "group" should not be named lead plaintiff. *Id.* (*citing In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) (holding that to allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation and would defeat the purpose of the Reform Act)).

Here each of the five plaintiffs submitted an affidavit that, among other things, declares that they agree to serve as lead plaintiff and "will be able to exercise joint decision-making and work together in this case to actively and efficiently supervise counsel and monitor the litigation." (Decl. of Leo W. Desmond, Ex. 1–5). They also acknowledged that as lead plaintiff they are fiduciaries to the class and as such should act in the best interests of the class. (*Id.*) Accordingly, they agreed to have meetings, monitor the litigation, and maintain regular contact with their counsel. (*Id.*) Finally, they explained that they retained their counsel because of counsel's substantial experience litigating securities class actions on behalf of shareholders and because they are located in New York. (*Id.*)

These affidavits notwithstanding, this Court is constrained to find that Garden State can not work effectively to adequately represent the interests of the class. Garden State Securities concedes that the only pre-existing relationship among the various proposed individuals is the fact that they all invested through the same broker at Garden State Securities. Further, it appears that these unrelated individuals amalgamated together for the sole purpose of obtaining lead plaintiff status. The extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit. Also, although each plaintiff submitted an affidavit acknowledging the duty to represent the class, there is no evidence to suggest that they have the background or investment experience to effectively monitor the litigation.

Second, Garden State has not demonstrated that it has negotiated a retainer with its counsel on behalf of the Class. The Third Circuit has explained that "one of the best ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to ... negotiate a reasonable retainer agreement with ... counsel." *In re Cendant Corp. Litig.*, 264 F.3d at 265–66 (*citing Raftery v. Mercury Fin. Co.*, No. 97 C 624, 1997 WL 529553, at *2 (N.D.Ill. Aug.15, 1997)(holding that movant was not entitled to presumptive lead plaintiff status because the retainer agreement, which capped attorney's fees at 33 1/3% of the total class recovery was not the result of hard bargaining)). Here, unlike Louisiana Teachers, Garden State has not submitted any evidence that it negotiated counsel's fees with their proposed lead counsel. The only documentation provided refers to the competency of the proposed lead counsel. (Desmond Decl., Ex. 4). Even after this Court questioned all movants for lead counsel about fees, Garden State, unlike StoneRidge Investment, did not submit evidence of fee negotiations.

Finally, Garden State has not demonstrated that it will adequately represent the interests of the class members who suffered losses in the Secondary Offering. Although Garden State has made a *prima facie* showing that it meets the typicality requirement of Rule 23,[6] it does not assert

6. This Court recognizes that the typicality requirement of Rule 23(a)(3) merely requires

all of the claims or legal theories of the purported class. Garden State only alleges violations under the Exchange Act and none under the Securities Act because it only participated in the primary offering and not the Secondary Offering conducted on November 8, 2001.

Garden State asserts that it satisfies the typicality requirement because, as all other class members, it engaged in purchase transactions of Suprema during the Class Period, and was thereby subjected to the improper and illegal acts and practices complained of, and consequently suffered damages. Garden State argues that the Securities Act allegations are synonymous with the Exchange Act allegations and, such satisfies the typicality requirement. The Securities Act allegations arise from the same course of conduct alleged by the remainder of the Class (i.e. that defendants made false and misleading material misstatements or omissions as to the Suprema's financial condition.).

Although this Court agrees that Garden State meets the typicality requirement, this Court finds that it may not adequately represent the interests of those plaintiffs who suffered harm in the Secondary Offering. The proof required to succeed under the Securities Act claims differs from that required under the Exchange Act claims. As example, under the Securities Act, purchasers are not required to prove scienter. Further, only secondary purchasers have standing to prosecute claims against the underwriters of the secondary. It may

well be that Garden State does not have the same qualitative incentive to pursue the Securities Act claims as those who were directly injured in the Secondary Offering because only the secondary purchasers will benefit from any recovery from the underwriters.

Accordingly, this Court concludes that Garden State is not entitled to lead plaintiff status: First, it did not suffer the greatest financial loss because unlike a proper "group" under the Reform Act, its losses cannot be aggregated. The greatest loss suffered by an individual of the proposed group is $247,680. Second, Garden State has not asserted that it negotiated a retainer with its proposed counsel. Finally, Garden State has not demonstrated that it can adequately represent the interests of those class members who suffered losses in the Secondary Offering. The Court now considers whether Louisiana Teachers satisfies the requirements of the Reform Act.

### C.  Louisiana Teachers

■ Louisiana Teachers, a large institutional investor, moves for appointment as lead plaintiff. It is undisputed that Louisiana Teachers has satisfied the procedural requirements of the Reform Act. However, StoneRidge Investment, Garden State and the Hitel Group contend that Louisiana Teachers is not entitled to presumptive lead plaintiff status because it has already served as lead plaintiff in at least five securities fraud class actions within the past three years.[7] This Court finds that

"the same or similar grievances" and does not require identity of claims. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir.1981); *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir.1996). Typicality is satisfied when the claims of the representative plaintiffs stem from the same practice or course of conduct and are based on the same legal theory as the claims of class members.

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir.1992); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 784 (3d Cir.) *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

7.  According to the Amended Certification, during the past three years, Louisiana Teachers has served as a lead plaintiff in the following securities fraud class actions: (1) *In re*

Louisiana Teachers may serve as lead plaintiff despite the Reform Act restriction and that it otherwise satisfies the Reform Act requirements because of its size of loss, its status as a public pension fund, the typicality of its claims and the adequacy of its representation.

Louisiana Teachers satisfies each prong of the most adequate plaintiff test. First, Louisiana Teachers filed a complaint on February 4, 2002 alleging that Suprema and its officers, directors and underwriters were liable for false and misleading statements made during the Class Period. Louisiana Teachers also filed an order to show cause to protect the right of the Class to rescind its stock purchases from Suprema and certain controlling shareholders during the Secondary Offering.

Second, Louisiana Teachers has suffered more than $600,000 in losses as a result of its purchase of Suprema common stock during the Class Period-the most economic loss of the parties qualified to serve as lead plaintiff.[8] The purpose of appointing a lead plaintiff on the basis of financial interest is to "ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market control the litigation, not lawyers." *In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997). In addition to the severe monetary loss, Louisiana Teachers, a public pension fund with assets over $10 billion, possesses the financial sophistication and expertise to ensure that the litigation will proceed in the best interests of the Class.

Finally, Louisiana Teachers is qualified to serve as lead plaintiff under Rule 23. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). The typicality prong is met because all of the claims at issue arise from the false and misleading statements and omissions made by Suprema and others during the Class Period.

Furthermore, Louisiana Teachers will fairly and adequately represent the interests of the Class. Louisiana Teachers' and their counsels' interests are clearly aligned with those of the Class; there is no evidence of any conflict between it and other Class members. As demonstrated, Louisiana Teachers and the rest of the Class share substantially similar questions of law and fact, and Louisiana Teachers' claims are typical of the Class. Also, Louisiana Teachers will adequately represent the interests of the class members who suffered losses in the Secondary Offering because it has brought claims under the Securities Act and the Exchange Act.

Garden State, StoneRidge Investment and the Hitel Group assert that Louisiana Teachers exceeded the so-called "professional plaintiff" bar imposed by the Reform Act because it is serving as lead plaintiff in five securities class actions initiated in the past three years. Section 27(a)(3)(B)(vi) of the Reform Act reads:

> Restrictions on professional plaintiffs— Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a

---

*Total Renal Care Sec. Litig.;* (2) *In re Summit Tech., Inc. Sec. Litig.;* (3) *In re Gateway Sec. Litig.;* (4) *In re Network Assoc. (II) Sec. Litig.;* (4) *In re Dollar General Sec. Litig.* and (5) *In re Rambus Corp. Sec. Litig.* Also, Louisiana Teachers has outstanding motions to serve as lead plaintiff in the following securities fraud class actions: (1) *In re Xerox Corp. Sec. Litig.* and (2) *In re A.C.I.N. Ltd. Sec. Litig.*

8. This Court has found that the two movants who allegedly had greater financial losses, Suprema Specialties and Garden State, are not qualified to serve as lead plaintiff in this action.

lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period.

15 U.S.C. § 78u–4 (a)(3)(B)(vi). The purpose of the Reform Act is to eliminate manipulation in securities class actions by lawyers and their seasoned, well-experienced plaintiffs. According to the Reform Act, Louisiana Teachers is *prima facie* statutorily disqualified from serving as lead plaintiff. The other movants assert that because the plain meaning of the statute is entirely clear, the Court should not look toward legislative intent.

Garden State and StoneRidge Investment charge that Louisiana Teachers' participation as lead plaintiff in five securities actions presents a potential obstacle to providing the most adequate representation to the Class. *See In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 444 (2002). Finally, Garden State says that Louisiana Teachers has not satisfied the rebuttable presumption under the Reform Act that the most adequate class representative is the one who has suffered the greatest financial loss.

This Court finds that the fact that Louisiana Teachers served as lead Plaintiff five times in the past three years does not automatically preclude it from serving as lead plaintiff here. The restriction in the Reform Act is not absolute. Rather, the language "clearly grants the Court the power to appoint a lead plaintiff despite its having served as lead plaintiff in five other suits in the past three years." *Piven v. Sykes Enters., Inc.,* 137 F.Supp.2d 1295, 1304 (M.D.Fla.2000). This Court looks toward the legislative intent to determine when it is appropriate to exercise such discretion. The legislative history clearly indicates that Congress specifically sought to exempt from the limitation institutional investors such as Louisiana Teachers:

> The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years. Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict.

H.R. Conf. Rep. No. 104–369. Accordingly, the Reform Act "grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years." Id.; 15 U.S.C. 78u–4(a)(3)(B)(vi).

In enacting the most adequate plaintiff requirement, Congress demonstrated its preference for institutional investors to have control over securities fraud litigations because they would "represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104–369, at 31–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730–34; *In re Cendant Corp. Litig.,* 264 F.3d at 264; *see also In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 309 (S.D.N.Y.2001)(institutional investors are in the best position to prosecute securities fraud claims and to negotiate with and supervise counsel). The legislative history of the Reform Act is "replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors." *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 548 (N.D.Tex.1997). Similarly, the Senate Report on the Reform Act emphasizes that "increasing the role of institutional investors in class actions w[ould] ultimately benefit the class and assist the courts." S.Rep.No. 104–98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

The majority of courts that have considered this issue have determined that the limitation does not apply to institutional investors. *See e.g., In re Critical Path, Inc.,* 156 F.Supp.2d 1102, 1112 (N.D.Cal. 2001) ("institutional investors do not represent the type of professional plaintiff [the Reform Act] seeks to restrict"); *Piven,* 137 F.Supp.2d at 1295 (permitting institutional investor to exceed limit). *In re Network Assoc., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999)(same); *Blaich v. Employee Solutions, Inc.,* No. 97–545–PHX–RGS, 1997 WL 842417, at *2 (D.Ariz. Nov.21, 1997)("the general restriction of serving in more than five cases as a lead plaintiff was not intended to apply to institutional investors."). As the Southern District of California noted:

> when Congress determined to impose "restrictions on professional plaintiffs," it knew precisely whom it intended to restrict. The Conference Report for the [Reform Act] defines "professional plaintiffs" as those who "own a nominal number of shares in a wide array of public companies [and who] permit lawyers readily to file abusive securities class action lawsuits." Clearly, these are not institutions. In fact, the Conference Report could not have been more explicit in stating that institutions, as opposed to professional plaintiffs, are not subject to the [Reform Act's] general limit on serving a lead plaintiff.

*Naiditch v. Applied Micro Circuits Corp.,* No. 01–CV–0649 K–AJB, 2001 WL 1659115, at *7 (S.D.Cal. Nov.5, 2001)(internal citations omitted).

Other courts which have recognized that the bar applies to institutional investors have held that the bar should be lifted where the other movants are not adequate candidates. *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146 (N.D.Cal.1999). As example, in *In re Enron Corp. Sec. Litig.,* the Court declined to appoint the Florida State Board of Administration as lead plaintiff, because of the unusual complexity of the Enron case and the fact that there were other qualified institutional investors seeking to lead that action. 206 F.R.D. at 456–57. Similarly, in *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803 (N.D.Ohio 1999), the court rejected the Florida State Board Administration because it was already lead plaintiff in more than five actions and because it was not the most adequate lead plaintiff. *Id.* at 822. Nevertheless, the court recognized that the Reform Act "grants courts discretion to ignore the prohibition in some instances." *Id.* at 820.

Here not only is Louisiana Teachers the only institutional investor that has moved for lead plaintiff, its extensive experience in acting as a fiduciary will benefit the Class. Louisiana Teachers is currently involved in only a few other litigations which will not impede its ability to oversee this case. In fact, Louisiana Teachers, unlike the other movants, has already demonstrated its desire to vigorously prosecute this action by taking steps to protect the interests of the Class: Louisiana Teachers has filed an order to show cause to freeze Suprema's assets, entered an appearance in the Suprema bankruptcy action and filed a proof of claim to ensure that the Class rights are preserved. Louisiana Teachers is the only movant who submitted a declaration from its general counsel demonstrating that it had negotiated the level of attorneys' fees with its proposed counsel. (Decl. Erik Sandsedt, Ex 15, ¶ 8).[9] This Court has reviewed the fee

9. StoneRidge Investment submitted a letter explaining that it had negotiated counsels' fees, but only after this Court requested information of such negotiations during oral arguments.

agreement *in camera* and finds it in conformity with recent Third Circuit decisions.

As such, this Court finds that Louisiana Teachers is entitled to presumptive lead plaintiff status and because no movant has submitted adequate evidence to rebut that presumption, it is named lead plaintiff. It is unnecessary to discuss the qualifications of the Hitel Group because this Court has already determined that Louisiana Teachers meets the requirements of the Reform Act and its losses of $600,000 are far in excess of the $127,500 suffered by the Hitel Group. However, this Court will briefly consider the Hitel Group's request to be appointed co-lead plaintiff.

### D. Hitel Group

This Court rejects Hitel Group's request to be appointed co-lead plaintiff to represent the interests of those plaintiffs who have suffered losses in the Secondary Offering. Such application is moot because Louisiana Teachers, the named lead plaintiff, has suffered injuries in the Secondary Offering. Unlike Garden State, Louisiana Teachers brought claims under both the Securities Act and the Exchange Act. It follows then that the Hitel Group's interests are adequately protected.

### II. *Appointment of Lead Counsel*

Under the Reform Act "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). This language makes clear that the lead plaintiff's "power to 'select and retain' lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding whether to 'approv[e]' that choice." *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir.2001). Both the Conference Committee Report and the Senate Report indicate that the court

should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104–369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104–98 at 11–12 (1995) *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

█ Here, Louisiana Teachers has selected Bernstein Litowitz to serve as lead counsel to the Class. Bernstein Litowitz is a reputable law firm with a long track record of successful prosecutions in securities fraud actions. As stated, Louisiana Teachers has negotiated a fee schedule with Bernstein Litowitz which, from *in camera* review, the Court finds compatible with recent Third Circuit decisions. Because Bernstein Litowitz appears to have the requisite ability and expertise to manage this litigation, and no reason has been presented why they should not be appointed, this Court approves Louisiana Teachers' selection of Bernstein Litowitz as lead counsel.

### *CONCLUSION*

This Court grants Louisiana Teachers' motion, and it is hereby appointed lead plaintiff. In addition, its selection of Bernstein Litowitz as lead counsel is approved. The motions of StoneRidge Investment, Garden State and the Hitel Group are denied.